PeR Curiam
: This case was referred to Trial Commissioner Mastín G. White pursuant to Kule 45 with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed May 26,1960. Briefs and exceptions to the commissioner’s findings were filed by both parties, and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the findings and recommendations of the trial commissioner, as hereinafter set forth, it hereby adopts the same as *304 the basis for its judgment in this case. Plaintiff is therefore entitled to a partial recovery on her claims, and defendant is likewise entitled to a partial recovery on its counterclaim. Judgment will be entered to that effect with the respective amounts of recovery to be determined in further proceedings pursuant to Rule 38 (c).
It is so ordered.
OPINION OP THE COMMISSIONER
The plaintiff, Annette T. Rubinstein, is an educator. She holds the degree of doctor of philosophy from Columbia University, and she is an experienced teacher and school administrator.
From 1934 until 1952, the plaintiff was the owner of the Robert Louis Stevenson School, located in New York City. (This institution will usually be referred to hereafter in the opinion as “the RLS School.”) For several years during the latter part of the period mentioned, beginning in 1946 and extending until 1952, the RLS School was attended by many veterans of World War II who were receiving educational benefits under the provisions of Part VIII of Veterans’ Regulation No. 1(a).[1] The present litigation grew out of a controversy that arose between the Veterans Administration (the agency administering Part VIII) and the RLS School over the latter’s charges under Part VIII for veterans’ tuition and for supplies furnished to veterans during their attendance at the school. (For the sake of convenience, the Veterans Administration will usually be referred to hereafter in the opinion as “the VA.”) The plaintiff, as the owner of the RLS School during the period involved in the litigation, is suing the Government on claims for tuition and supplies, aggregating $314,769.13, which the RLS School submitted to the VA and which the latter declined to pay. The Government denies any liability to the plaintiff on the claims alleged in the petition, and asserts a counterclaim against the plaintiff in the total amount of $456,986.55 be *305 cause of overcharges allegedly collected by the RLS School in other instances under Part VIII.
By order of the commissioner, the trial was limited to the issues of law and fact relating to the right of the respective parties to recover. The determination of the amount of any recovery was reserved for further proceedings.
When the plaintiff became the owner of the RLS School in 1934, it was a private day school, offering instruction from the 1st grade through the 12th grade. The school was organized at that time into two divisions, an elementary school that included grades 1-6 and a secondary school that included grades 7-12.
As of 1934, the RLS School had been, for a period of approximately 4 years, registered by the Regents of the University of the State of New York “as a secondary institution of high school grade.” The Regents are the official approving agency for public and private secondary schools in the State of New York, and the action of the Regents with respect to the RLS School was, in effect, a registration of the top four grades of the school as constituting an accredited high school. It was an approval of the curriculum of the RLS School for, and of the instruction given by the school in, the 9th, 10th, 11th, and 12th grades. In addition, it amounted to an implied approval of the curriculum and instruction in the 7th and 8th grades as providing a satisfactory foundation for entrance into high school.
The plaintiff, after acquiring the ownership of the RLS School, operated it as a 12-year school until 1942 or 1943, when the six elementary grades were discontinued. Thereafter, the school continued to offer instruction in grades 7 through 12.
After the Congress legislatively expanded Veterans’ Regulation No. 1(a) by adding Part VIII to it in order to provide educational benefits for veterans of World War II, the RLS School on June 19, 1946, wrote a letter to an official of the VA in New York City, stating as follows:
The Robert Louis Stevenson School, exclusively a girls high school for forty years, announces the opening of its doors to ex-servicemen and women this fall. Recognizing the urgent need of training facilities for veterans, Stevenson has reorganized its curriculum to *306 include a full-time afternoon and evening session. Arrangements have been made to accommodate 250 veterans for the fall term.
Fully accredited by the New York State Board of Regents, the school is offering an accelerated program of Regents and non-Regents subjects. Veterans will be prepared for college entrance or occupations requiring a high school diploma.
Registrations are now being accepted.
The enrollment of veterans in the RLS School under Part VIII of Veterans’ Regulation No. 1(a) began in the fall of 1946.
In order that the regular program of the RLS School for the education of children might not be disrupted unduly by the admission of veterans, the plaintiff established an evening division of the school for adults only in the fall of 1946. Veterans who entered the RLS School in the fall of 1946 were admitted to the evening school. In the spring of 1947, however, the plaintiff set up an adult section in the day school, and some veterans were admitted to the day school. At about the same time, the plaintiff decided to convert the day school gradually into a school for adults; and this program of conversion was thereafter carried out. The first step was to discontinue the giving of instruction in the 7th and 8th grades to children. Subsequently, the giving of instruction to children in other grades was discontinued on a gradual basis, until the entire RLS School, both the evening school and the day school, became an institution for the education of adults, most of whom were veterans receiving benefits under the provisions of Part VIII of Veterans’ Regulation No. 1(a).
The RLS School continued, as before, to give instruction in grades 7 through 12. Its year was divided into a fall semester, a spring semester, and a summer term.
On January 16, 1948, the Regents of the University of the State of New York registered the evening school of the RLS School “as a High School maintaining an approved secondary program covering 9th-12th years * * * .”
Beginning in late 1948 or early 1949, the RLS School found itself facing a serious educational problem due to the fact that its student body included many Puerto- Rican veterans with English-language deficiencies and other scholastic *307 deficiencies as well. The student body also included numerous other veterans with poor educational backgrounds. For a time, the school endeavored to cope with this problem by assigning such veterans to the school’s regular classes, and giving these veterans special attention and instruction within the respective classes. This plan, however, did not enable the problem students to cope with the subjects as taught in the regular classes; it was a handicap to the other students in the classes to which the problem students were assigned; and it imposed an undue hardship on the teachers of such classes. The ELS School then established special classes in various subjects for the problem students. Some of the subjects involved in this special program were modified (i.e., less difficult) versions of certain of the school’s regular 7th-, 8th-, 9th-, and 10th-grade subjects, particularly English and mathematics. Others were special subjects, usually of an elementary nature, that were not specifically related to the existing grades 7-12 in the ELS School. In devising this program for problem students, the ELS School was following educational policies generally regarded as sound.
Credit toward high school graduation was granted by the ELS School for the successful completion of the modified versions of 9th-grade and 10th-grade subjects. High school credit was not granted, however, for the successful completion of modified versions of 7th-grade and 8th-grade subjects, or for the other special subjects that were set up for the problem students. (A few exceptions to the general statement made in the preceding sentence will be referred to hereafter in the opinion.)
During the period 1949-1952, the VA declined to pay many vouchers that were submitted to the agency by the ELS School for the tuition of, and for supplies furnished to, veterans who were attending the school under Part VIII of Veterans’ Eegulation No. 1 (a). It is alleged in the petition that the amounts claimed in the unpaid vouchers total $314,769.13, and this is the sum that the plaintiff is attempting to recover in the present case. The defendant contends, in the first place, that the plaintiff is not entitled to receive anything on the claims growing out of the unpaid vouchers. Furthermore, the defendant asserts a counterclaim against the plaintiff in the total amount of $456,986.55, on the ground *308 that the RLS School was overpaid in many other instances because of overcharges that the school made, and collected from the VA, for veterans’ tuition and for supplies furnished to veterans.
The issues involved in the suit will be discussed in relation to certain veterans who were enrolled in the RLS School and whose cases are said by the defendant to illustrate the contentions that the defendant is making in the litigation.

High School Course

The veteran George Baskins, Jr., was a student in the RLS School during the period 1951-1952. He first entered the school in the spring semester of 1951, after the semester was more than half over. He was enrolled in five classes for the period of his attendance during that semester. These included a class in a modified (i.e., less difficult) version of 8th-grade English designated as English 8-Jr. (Reading), a class in a modified version of 8th-grade English designated as English 8-Jr. (Written), a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., and a class in a special subject designated as Mathematics-Jr.[2] The defendant asserts a counterclaim in the present litigation against the plaintiff for $36.78, representing the tuition that was paid by the VA to the RLS School in connection with Baskins’ enrollment in the two English classes. It is the defendant’s contention that the RLS School was obligated to provide a high school course of study for Baskins and, therefore, was required to restrict his enrollment to high school subjects (i.e., subjects at the level of grades 9-12 for which credit toward high school graduation was granted if successfully completed) .[3]
The defendant’s contention that the RLS School was obligated to provide a high school course of study for Baskins *309 is based upon alternative theories. The first theory appears to be that the RLS School was approved under Part VIII of Veterans’ Regulation No. 1 (a) as a high school, and, accordingly, that the RLS School was limited by the statutory language of Part VIII to the giving of instruction in high school subjects to veterans who attended the school under the provisions of Part VIII.
An examination of the provisions of Part VIII (which, are set out in finding 6) will reveal that veterans receiving benefits under this legislation were required to attend “approved” educational or training institutions, and that the VA was directed to “secure from the appropriate agency of each State a list of the educational and training institutions * * * within such jurisdiction, which are qualified and equipped to furnish education or training * * *, which institutions * * * shall be deemed qualified and approved to furnish education or training to such persons as shall enroll under this part * * * .”
Although there is a clear inference to be drawn from the evidence that the RLS School appeared on the list which the VA obtained from the New York State Education Department pursuant to the directive contained in the statutory language just quoted, the actual list was not introduced in evidence. The Government assumes for the purpose of this case that the list, in referring to the RLS School, used language which designated it as a high school and somehow restricted it to the giving of instruction in high school subjects to veterans. This position taken by the Government in the litigation is inconsistent, however, with the position which the Government took in its relations with the RLS School prior to the beginning of the present case. The record reveals that many veterans were certified by the VA to the RLS School for courses of study other than high school courses. Some of the designations used by the VA in such certifications were “course in Junior High School Training,” “Basic Education Studies,” “course in Reading, Speaking and Writing English,” “Junior High School Course,” “Elementary course,” “Elementary School course,” “Academic (Grammar) course,” “Academic course (Reading, Writing and Arithmetic only),” “Academic Course on Elementary *310 Level,” “Elementary School training,” “Beginner’s English,” “Basic English Course,” “Elementary Education course,” “Elementary School Subjects,” “course in English and related elementary subjects,” “course in Elementary Schooling,” “course in English for Foreigners and Typing,” and “courses in Basic English, Arithmetic and General Studies.”
Moreover, while it is true that the registrations of the day and evening divisions of the RLS School by the Regents of the University of the State of New York for accreditation purposes referred to the school “as a secondary institution of high school grade” and “as a High School maintaining an approved secondary program covering 9th-12th years,” the State Education Department (which operated under the Regents) was aware (on the basis of the regular inspections that it made of the RLS School and of the reports which it regularly received from the school) of the subjects below the high school level that were being taught by the RLS School, and by continuing the registrations it impliedly approved the pre-high school phase of the school’s work as providing a satisfactory foundation for entrance into high school.
I do not believe, therefore, that the court can accept the Government’s assumption for the purpose of this litigation that the listing of the RLS School by the New York State Education Department under Part VIII of Veterans’ Regulation No. 1(a) used restrictive language which limited the school to the giving of instruction in high school subjects to veterans who attended the school under Part VIII.
The Government makes an alternative contention to the effect that there was an agreement between the VA and the RLS School with respect to the veteran Baskins which obligated the school to provide a high school course of study for Baskins.
For a proper understanding of the contention mentioned in the preceding paragraph, it is necessary to summarize the procedure, as established by the VA, which was followed in connection with the enrollment of veterans in the RLS School under Part VIII of Veterans’ Regulation No. 1(a). A veteran desiring to obtain the educational benefits pro *311 vided for in Part YIII signed an application on a form prescribed by the YA and submitted the application, either in person or through the mail, to the local field office of the YA. The application was reviewed by the YA field office; and if it appeared that the veteran was eligible under Part VIII, a certificate of eligibility and entitlement was executed by a VA official. This certificate indicated the length of time (in years, months, and days) that the veteran was entitled to receive education or training under Part YIII, and many certificates undertook to specify the course of study that the veteran could pursue. After the execution of this certificate, it was furnished to the veteran, who took it to the ELS School as the institution of his choice. Upon admitting the veteran, the ELS School executed and forwarded to the VA a certificate with respect to the enrollment of the veteran. This certificate, which was on a form prescribed by the YA, stated (among other things) the date of the enrollment, the name of the course for which the veteran had been enrolled, the length of the course, and the estimated charges for the period of enrollment. At the bottom of the form on which the enrollment certificate was executed, there appeared a printed statement to the effect that “This certification * * * becomes the basis for payment of all training benefits to, and in behalf of, this veteran.”
In the case of the veteran Baskins, the certificate of eligibility and entitlement which the VA issued to this veteran, and which was the authority for his enrollment in the ELS School, stated that it was “Valid for academic H.S. [High School] course at Eobert L. Stevenson school * * The certificate that was executed by an official of the ELS School in connection with Baskins’ enrollment gave the name of the course for which he was enrolled as “High School — Academic.” The ELS School obtained payments from the YA for Baskins’ tuition, and for the supplies furnished to him, on the basis of vouchers which were submitted by the school to the VA from time to time during Baskins’ attendance. Each voucher included the claims for tuition and supplies with respect to a large number of veterans who were attending the school at the particular time, and it indicated that all of them were taking a “High School *312 Course.” However, there was attached to the voucher a list showing the specific subjects taken by each student during the particular period.
The evidence in the record does not show why the VA certified the veteran Baskins to the RLS School for an “academic H.S. [High School] course.” There is nothing to indicate that any VA official evaluated Baskins’ qualifications and concluded that he was ready for and should have a high school course. Furthermore, it should be noted that the VA did not have any authority under the governing legislation to restrict Baskins with respect to the course of study that he might pursue under the provisions of Part VIII of Veterans’ Regulation No. 1(a). This is made clear by the statutory language to the effect that an eligible veteran “shall be * * * entitled to such course of education or training * * * as he may elect, and at any approved educational or training institution at which he chooses to enroll * * * which will accept or retain him as a student or trainee in any field or branch of knowledge which such institution finds him qualified to umdertahe or •pursue” and that no administrative regulation should be issued, and no construction of the pertinent legislation should be adopted, “which denies or is designed to deny to any eligible person, or limit any eligible person in, his right to select such course or courses as he may desire” (emphasis supplied) .[4]
If a veteran, having selected a course of study and having enrolled for the course at an approved institution, desired to change the course, it was necessary that he obtain the approval of the VA. This, however, was the extent of the administrative agency’s authority with respect to courses under Part VIII of Veterans’ Regulation No. 1 (a), in so far as the issues involved in the present case are concerned. There is nothing in the evidence to indicate that the veteran Baskins was involved in a change of course without proper approval, or that the VA was prejudiced in any way, with respect to the agency’s authority over course changes, by virtue of the fact that Baskins was enrolled in some subjects below the high school level.
*313 With, respect to the action of the ELS School in certifying to the VA, upon Baskins’ enrollment in the school, that the course for which he was enrolled was “High School-Academic,” it is necessary to consider the significance of this certification from the standpoint of the VA. As has been previously noted, the authority of the VA over courses of instruction was limited (in so far as the issues in this case are concerned) to the approval or disapproval of proposed course changes by veterans. Hence, even if the certification by the ELS School regarding the course for which Baskins had enrolled was inaccurate, that could be regarded as a material misrepresentation for the purposes of this case only if the VA was prejudiced somehow by such inaccuracy in connection with the exercise of the power to approve or disapprove course changes. As pointed out above, there is nothing in the evidence to indicate that Baskins was involved at any time in an unauthorized change of course.
Furthermore, the indication by the ELS School in the vouchers to the effect that Baskins (together with other veterans) was taking a “High School Course” cannot provide a legal basis for the counterclaim previously mentioned, particularly since the ELS School submitted along with the vouchers complete information regarding the specific subjects for which Baskins was enrolled.
When the pertinent certificate of eligibility and entitlement, the enrollment certificate, and the vouchers relating to Baskins are considered, I do not believe that they together constituted any sort of binding agreement between the ELS School and the VA that the school would enroll Baskins only for high school subjects.
Perhaps the provisions of a written contract between the VA and the evening division of the ELS School should be mentioned at this point.
No written contract for the training of veterans was ever entered into between the VA and the day school division of the ELS School. Payments by the VA to the day school for the education of veterans under Part VIII of Veterans’ Eegulation No. 1(a) were based upon the day school’s customary charges for tuition and supplies. As the result, however, of a regulation that was promulgated by the VA *314 on May 17,1948 (see finding 13), contracts covering periods of 1 year each were thereafter entered into between the YA and the evening school division of the ELS School. One of these contracts was in effect from September 1,1950, to August 31,1951. Although the evidence does not show whether Baskins attended the evening school or the day school in the spring semester of 1951, it will be assumed, for the purpose of the present discussion, that he attended the evening school, and that the provisions of the contract just referred to are pertinent.
The contract in question (see findings 16-17) provided that “The Contractor [ELS School] will provide instruction * * * to * * * veterans * * * who may be accepted or retained by the Contractor as students in such courses as the Contractor finds them qualified to undertake or ‘pursue” (emphasis supplied). Attached to and made a part of the contract was a printed folder of the ELS School which gave the school’s curriculum. Among the subjects listed were “J.H.S. [Junior High School] English,” “Eemedial” English, “J.H.S. Mathematics,” and “Other Subjects as Ee-quired.” It will be readily seen, therefore, that the contract between the evening school division of the ELS School and the YA that was in effect during the spring semester of 1951 cannot provide a basis for the Government’s contention that the ELS School was under a legal obligation to enroll the veteran Baskins only for high school subjects.
It follows, from what has been said above, that the Government’s tuition counterclaim for $36.78 in connection with the two English subjects that were taken by the veteran Baskins in the spring semester of 1951 should be disallowed, in my opinion. I do not believe that the ELS School was legally required to restrict Baskins, or to limit its claims respecting his tuition and supplies, to high school subjects.
The discussion in this part of the opinion is also applicable to the many other situations in which the Government counterclaims in the present litigation, or declined to pay vouchers submitted by the ELS School to the YA, on the ground that the ELS School was legally restricted to the giving of instruction in high school subjects to veterans at *315 tending the school under Part VIII of Veterans’ Regulation No. 1(a).

Repetitive Instruction

The veteran Baskins took the second half of a modified version of 8th-grade mathematics, designated as Mathematics 8-B, in the summer term of 1951 and received a grade of 70. He took the same subject over again in the fall semester of 1951, receiving a grade of 75. He took the same subject over a third time in the spring semester of 1952, receiving a grade of 65. The defendant’s counterclaim includes the amounts that the VA paid to the RLS School as tuition in connection with the taking of this subject by Baskins in the summer term and fall semester of 1951. Also, the VA disallowed the claim of the RLS School for Baskins’ tuition in connection with the taking of this same subject in the spring semester of 1952, and this claim is one of those upon which the plaintiff is suing in the present case. The defendant’s counterclaim is based, and the disallowance of the plaintiff’s claim is attempted to be justified by the Government, principally upon the ground that the RLS School was authorized to give instruction to Baskins only in high school subjects. For the reasons given in another part of the opinion, it is my view that this position is untenable.
With respect to the defendant’s counterclaim for the tuition ($50) that was paid to the RLS School in connection with the taking of Mathematics 8-B by Baskins a second time in the fall semester of 1951, and the disallowance of the plaintiff’s claim for tuition ($50) in connection with the taking of this same subject for a third time in the spring semester of 1952, the Government presents an alternative contention based upon the repetition of the subject. It seems to me that this alternative argument is sound.
We have here the situation of a veteran who, after having taken and completed a subject and received a better-than-passing grade of 70 in it, repeated the same subject a second time, and then a third time, with the RLS School charging the VA tuition in connection with each repetition of the subject. The whole purpose of the program authorized by the Congress in Part VIII of Veterans’ Regulation No. 1(a) was that eligible veterans should “receive education or train *316 ing under this part.” Since the RLS School was an educational (as distinguished from a training) institution, its participation in the program imposed upon it an obligation, in consideration of the financial benefits which it received, to further the “education” of veterans. I do not believe that the school discharged its obligation in this respect when it permitted the veteran Baskins to mark time, at the expense of the Government, by repeating in the fall semester of 1951, and again in the spring semester of 1952, a subject in which he had already received a better-than-passing mark in the summer term of 1951.
It is my opinion, therefore, that the Government’s counterclaim for the tuition that was paid to the RLS School in connection with the taking of Mathematics 8-B in the fall semester of 1951 by Baskins should be allowed, and, conversely, that the plaintiff’s claim for tuition in connection with the taking of this same subject by Baskins in the spring semester of 1952 should not be allowed.
The same principle would be applicable in the many other situations where the evidence plainly shows that veterans attending the RLS School repeated subjects which they had previously completed with passing marks.
On the other hand, there are instances where the Government has included items in its counterclaim, or has disallowed claims by the RLS School, on the ground of alleged repetition, when the evidence in the record does not justify such action. For example, the veteran Juan Orengo took two classes in the regular 2-semester 9th grade English subject, designated as English 1-2, during the fall semester of 1948. The defendant counterclaims for the amount that was paid for tuition ($46.87) and the amount that was paid for supplies ($1.24) in connection with one of these two classes. The defendant assumes that the two classes in 9th-grade English covered the same subject matter and were repetitive of each other. There is no direct evidence in the record relating to the alleged repetition. The inference is warranted that one of the English classes covered the first semester’s work in this 2-semester English subject, and the other class covered the second semester’s work in the same subject. Consequently, I do not believe that the court should allow the counterclaim referred to in this paragraph.
*317 Also, the veteran Orengo took part of a 2-semester subject designated as Spanish 7-8 in the spring semester of 1950, receiving a grade of 80, and he took another part of this subject in the summer term of 1950, receiving a grade of 80. Subsequently, Orengo took a subject designated as Spanish 8 in the fall semester of 1950. The Government asserts a counterclaim for Orengo’s tuition ($50) and for the supplies that were furnished to him ($1.65) in connection with the taking of Spanish 8 in the fall semester of 1950. This counterclaim is based upon the assumption that the instruction in Spanish 8 was a repetition of the instruction previously given to Orengo in Spanish 7-8 during the spring semester and summer term of 1950. As there is no evidence in the record bearing directly on the question of the alleged repetition, the inference is warranted that Spanish 8 was a different subject from and not repetitive of Spanish 7-8. Accordingly, it is my opinion that this counterclaim should not be allowed by the court.
The veteran Orengo took a subject designated as Social Studies 8 in the fall semester of 1951, but did not receive any grade in this subject. He was also enrolled in Social Studies 8 for part of the spring semester of 1952. The RLS School submitted to the VA a tuition claim for $16.50, and a supplies claim for $1.29, in connection with Orengo’s enrollment in Social Studies 8 during a portion of the spring semester in 1952. This claim was disallowed by the YA, and it forms part of the plaintiff’s cause of action in the present case. The disallowance was based on the assumption that the instruction in Social Studies 8 which Orengo received in the spring semester of 1952 was repetitive of the instruction in Social Studies 8 which he had received in the fall semester of 1951. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer either that the instruction which was given to Orengo in Social Studies 8 during the fall semester of 1951 covered the first semester’s work in a 2-semester subject and the instruction which was given to him in the spring semester of 1952 covered a portion of the second semester’s work in the same subject, or that Orengo failed to pass the part of Social Studies 8 which he took in the fall semester of 1951 and was *318 properly repeating the same part of the subject in the spring semester of 1952. It is my opinion, therefore, that the court should allow the claim of the plaintiff that is discussed in this paragraph.
The findings refer to a number of additional situations similar to those discussed in the three preceding paragraphs relative to the veteran Orengo.

Art Subjects

The veteran Juan Colon Ortiz took art in the fall semester of 1950, receiving a grade of 65; he took art in the spring semester of 1951, receiving a grade of 75; he took art in the summer term of 1951, receiving a grade of 70; he took art in the fall semester of 1951, receiving a grade of 85; and he took art in the spring semester of 1952, receiving a grade of 65. The defendant’s counterclaim includes the amounts which the YA paid to the RLS School for tuition ($20) and supplies ($4) in connection with the taking of art by Colon Ortiz in the summer term of 1951. Also, the VA disallowed the claim of the RLS School for tuition ($29.80) in connection with the taking of art by Colon Ortiz in the fall semester of 1951, and it disallowed the claim of the RLS School for tuition ($50) in connection with the taking of art by Colon Ortiz in the spring semester of 1952. The amounts of $29.80 and $50 constitute part of the plaintiff’s cause of action in the present case. The counterclaim with respect to the summer term of 1951, and the disallowances with respect to the fall semester of 1951 and spring semester of 1952, were based upon the assumption that the art instruction which Colon Ortiz received during these periods was repetitive of the instruction in art which he had previously received.
There is no direct evidence in the record on the issue of the alleged repetition mentioned in the preceding paragraph. The evidence shows that during the period involved in the present litigation, the curriculum of the RLS School included a number of different subjects in the field of art. They were designated as General Art, Basic Art, Drawing and Painting, Advanced Design, Comprehensive Art, Commercial Advertising, Costume Design and Illustration, Water Color, Oil Painting, Art History, and Craft. These *319 were high school subjects and, upon the completion of one of these subjects by a student, an appropriate unit of credit toward high school graduation was entered on the student’s record card under the designation of “Art,” without any indication of the particular art subject which the student had taken.
Therefore, it is reasonable to infer that Colon Ortiz took different art subjects in the fall semester of 1950, the spring semester of 1951, the summer term of 1951, the fall semester of 1951, and the spring semester of 1952. Accordingly, I believe that the Government’s counterclaim with respect to the taking of art by Colon Ortiz in the summer term of 1951 should not be allowed, and, conversely, that the plaintiff’s claims with respect to the taking of art by Colon Ortiz in the fall semester of 1951 and the spring semester of 1952 should be allowed against the allegation of repetitive instruction.[5]

Modified English Subjects

The veteran Juan Gascot was enrolled in four classes in the fall semester of 1951. They were a class in a modified version of 9th-grade English designated as English 9 (Reading), a class in a modified version of 9th-grade English designated as English 9 (Written), a class in a modified version of 9th-grade English designated as English 9 (Oral), which Gascot attended for part of the semester only, and a class in 10th-grade history designated as History 10-A. The RLS School’s tuition claim with respect to these classes was disallowed by the VA to the extent of $15.88, representing the amount of the tuition for English 9 (Oral). The VA took the position that the plaintiff was not entitled to collect tuition for more than two classes, lasting a semester each, in 9th-grade English. The plaintiff is suing for the $15.88 in the present action.
With regard to the disallowance mentioned in the preceding paragraph, it should be explained that, in establishing modified versions of the regular 9th-grade and 10th-grade subjects in English for the scholastically deficient students *320 referred to earlier in the opinion, tlie RLS School adopted a plan whereby each of these modified English subjects was divided into three classes and each class lasted for a semester. Hence, a scholastically deficient student was given three semesters of instruction in a modified English subject, instead of the two semesters of instruction per English' subject traditionally given in the regular classes. Under the 3-semester plan, the reading aspects of a particular subject were emphasized during a semester in one class, the oral (or speech) aspects of the subject were emphasized during a semester in another class, and the written aspects of the subject were emphasized during a semester in still another class. Separate tuition charges were made by the RLS School for the three classes.
Different materials were studied in the different English classes under the 3-semester plan. Consequently, the refusal of the VA to pay the RLS School’s tuition charge for English 9 (Oral) in Gascot’s case cannot be justified on the ground that the instruction which Gascot received in this phase of modified 9th-grade English was repetitive of the instruction which he received in English 9 (Reading) and English 9 (Written).
It is true that a student who successfully completed the reading, oral, and written aspects of a modified 9th-grade or a modified 10th-grade English subject on the basis of three semesters of work was given only one credit in 9th-grade English or 10th-grade English, as the case might be, toward high school graduation. This was the same amount of credit that another student would receive on the successful completion of two semesters’ work in the regular 9th-grade or 10th-grade English subject. In this connection, however, it is pertinent to note that throughout the relationship between the RLS School and the VA, the school’s tuition charges were based upon the hours of instruction that were actually given to veterans in the various subjects, and not upon the extent of the high school credits that were earned or could be earned by the veterans in such subjects. Hence, the charging of tuition on the basis of the actual hours of instruction given in the modified English subjects was consistent with the prevailing practice in connection with other subjects.
*321 It is my opinion, therefore, that the plaintiff’s claim in the present litigation for tuition in connection with the taking of English 9 (Oral) by Gascot in the fall semester of 1951 should be allowed.
The same principle would be equally applicable in numerous other situations where the Government has counterclaimed, or has disallowed the RLS School’s claims, for the tuition covering the third semester’s instruction in a 3-semester modified English subject.

Withdrawal of Approval of RLS School

The veteran Juan Gascot took three subjects in the spring semester of 1952. They were a modified version of 10th-grade English designated as English 10 (Reading), History 10-B, and History 11-A. The RLS School submitted a tuition claim for $150 with respect to these three subjects. The claim was disallowed by the VA to the extent of $40.50 on the ground that the approval of the RLS School under Part VIII of Veterans’ Regulation No. 1(a) was withdrawn on May 21, 1952. The plaintiff is suing for the $40.50 in the present action.
Section 5 of the Act of July 13, 1950 (64 Stat. 336, 340) amended paragraph 11 of Part VIII of Veterans’ Regulation No. 1(a) by adding at the end thereof a new subpara-graph (see finding 20) stating that “In order to * * * retain approval to train veterans, any school operated for profit * * * will be required to submit to the appropriate State approving agency a written application, in form and contents prescribed by the State approving agency, setting forth the course or courses of training.” The new subparagraph then proceeded to outline in considerable detail the information that should be submitted by an applicant school; and it declared that an application might be approved by the State approving agency if the school was found upon investigation to have met certain prescribed criteria. The new subpara-graph further provided as follows:
The Veterans Administration is not authorized to award benefits under this part if it is found by the appropriate State approving agency that the course offered by a school operated for profit fails to meet the applicable requirements of this subparagraph * * *.
*322 Although, officials of the RLS School were aware of the enactment of the legislation just referred to, and of the applicability of such legislation to the school, no application for continued approval had been submitted on behalf of the school to the New York State Education Department as of May 19, 1952. Indeed, no effort had 'been made as of that date to obtain from the State Education Department a form on which to submit an application for continued approval.
By means of a communication dated May 19, 1952, and received on May 21, 1952, the New York State Education Department informed the manager of the VA regional office for New York State that the RLS School was withdrawn from the list of schools approved for the education and training of veterans, because of the failure of the school to file an application for approval under the legislation of July 13, 1950.
On May 23, 1952, the acting manager of the VA regional office notified the RLS School by registered mail of the receipt on May 21 of the communication from the State Education Department, and then stated:
Action has been taken by the appropriate officials of our Vocational Rehabilitation and Education Division to notify by letter each individual veteran student enrolled at your institution that his training was discontinued effective May 21, 1952, owing to the withdrawal of the approval of your institution for the training of veterans.
No further enrollment or re-enrollment of veterans will be authorized at your institution while its status continues as “not approved for veteran training.”
Notwithstanding notifications from the VA to the veterans who were enrolled in the RLS School that participation by the RLS School in the program for the education of veterans had been discontinued as of May 21,1952, few of the veterans withdrew from the RLS School because of such notifications.
On May 24, 1952, an official of the RLS School went to Albany for the purpose of obtaining from the New York State Education Department a form upon which to submit an application for continued approval of the school under the legislation of July 13, 1950. He was informed by the State Education Department that no special form for that *323 purpose had been prescribed, and he was furnished a form entitled “Application for Admission or Advancement of a Secondary School,” which was the form customarily used by secondary schools in connection with registration for the purpose of accreditation. In addition, he was informed that a supplemental application form would be forwarded to the RLS School shortly thereafter. Such a supplemental application form, prepared on a typewriter, was later transmitted by the State Education Department to the RLS School, and was received on May 27 or 28, 1952.
As soon as possible after the events referred to in the preceding paragraph, the RLS School’s application for approval under the legislation of July 13, 1950, was prepared and submitted to the New York State Education Department. It was received on or about June 2,1952.
Sometime between June 2 and 26, 1952, the plaintiff sold the RLS School to a new owner. The latter then submitted to the New York State Education Department a new application for the approval of the RLS School under the legislation of July 13,1950.
The RLS School was approved under the legislation of July 13, 1950, by the New York State Education Department as of June 26,1952. This approval was based upon the application of the new owner, and after the latter had agreed to make certain changes in the curriculum.
The VA declined to pay the RLS School’s tuition claims for the period May 21-June 25, 1952, and such claims are asserted by the plaintiff in the present litigation.[6]
The plaintiff contends that the refusal of the VA to pay tuition claims for the period immediately following the action of the New York State Education Department in withdrawing the approval of the RLS School was improper in view of 38 CFR, 1949 ed., 21.418(d), as amended effective May 1, 1951 (16 F.R. 3800).
*324 That regulation prescribed the procedure that should be followed when a VA regional office was notified by a State approving agency that a school in which veterans were enrolled under Part VIII of Veterans’ [Regulation No. 1(a) had been removed from the list of approved schools. The regulation declared that if the removal action was based on the failure of the school to meet the criteria set out in the legislation of July 13, 1950, “the determination of the State approving agency will be final.” If, however, the removal action was based on some other ground, the regulation provided as follows:
Where there is evidence which indicates a definite intention and effort on the part of the institution or establishment to correct the inadequacies which necessitated revocation of its approval, and the evidence shows that the institution or establishment has the ability to correct such inadequacies within a reasonable length of time, the manager :[of the VA regional office], upon recommendation of the chief, vocational rehabilitation and education, will set a specific date, not to exceed 60 days from the date of revocation of approval, which date will become the effective date of disapproval unless re-approval is received in the regional office by the expiration date.
The only inadequacy on the part of the RLS School mentioned by the New York State Education Department in notifying the VA regional office that the approval of the school had been withdrawn was the failure of the school to submit an application for continued approval pursuant to the legislation of July 13, 1950. Such an inadequacy was easily correctable within a reasonable time, and all the available evidence was to the effect that as soon as the RLS School was notified of the disapproval, it displayed a definite intention and instituted a determined effort to correct the deficiency. In such a situation, it was clearly contemplated by the pertinent regulation that the school should be given a reasonable period of time, not to exceed 60 days, in which to correct the deficiency, before the withdrawal of approval became effective. The VA regional office did not comply with the regulation by fixing such a period of grace, but immediately notified the RLS School, and also the veterans who were attending the school, that no further payments would *325 be made to tbe school under Part VIII of Veterans’ Regulation No. 1(a).
The VA was not required, under the legislation of July 18, 1950, to provide by regulation for the granting to educational institutions of periods of grace within which to correct inadequacies before announced withdrawals of approval should become effective. In the absence of an administrative regulation such as that mentioned above, any withdrawal of approval by a State approving agency would have been effective immediately to disqualify the particular institution for further participation in the program under Part VIII of Veterans’ Regulation No. 1(a). Having provided by regulation for the fixing of a period of grace, however, the VA was required to adhere to the regulation so long as it remained in effect. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539 (1959); Watson v. United States, 142 Ct. Cl. 749, 756 (1958).
It is difficult to understand why the RLS School delayed the submission of its application for continued approval under the legislation of July 13,1950, until it was notified of the State Education Department’s withdrawal of approval.[7] In this connection, however, the RLS School was like other institutions that took advantage of a liberal administrative policy by waiting to correct inadequacies until notified that the approval of the State approving agency had been withdrawn, and then remedied the deficiencies during the period of grace allowed under the regulation discussed above. The wisdom or unwisdom of the lenient administrative policy exemplified by the regulation is not for this court to decide. It is sufficient to say that the RLS School could not properly be denied the benefit of the regulation so long as it remained in effect.
Since the VA did not follow its own regulation by fixing a period of grace within which the RLS School might correct *326 the inadequacy that led the State Education Department to withdraw its approval, and since the maximum period of 60 days provided for in the regulation did not expire prior to the reapprova! of the RLS School by the State Education Department, it must be concluded that the withdrawal of approval by the State Education Department never became effective under the pertinent regulation. Hence, the action of the VA in refusing to make any payments to the RLS School under Part VIII of Veterans’ Regulation No. 1(a) for the period between May 21 and June 25, 1952, was improper, in my opinion.

Gonolmion

It appears, upon applying the principles discussed in this opinion to the facts set out in the findings, that the plaintiff is entitled to a partial recovery on the claims set out in the petition, and that the defendant is entitled to a partial recovery on the counterclaim.
BINDINGS OB BACT
1. The plaintiff, Annette T. Rubinstein, is an educator. She holds the degree of doctor of philosophy from Columbia University, and she has had extensive experience as a teacher and as a school administrator.
2. In 1934, the plaintiff became the owner of the Robert Louis Stevenson School (which will usually be referred to hereafter in the findings as “the RLS School”), located in the city of New York, N.Y. At that time, the RLS School was a private day school, offering instruction from the 1st grade through the 12th grade. The school was organized into two divisions, an elementary school that included grades 1-6 and a secondary school that included grades 1 through 12.
3. (a) On September 18,1930, approximately 4 years prior to the acquisition of the RLS School by the plaintiff, the school had been admitted to the University of the State of New York by the Regents of that institution “as a secondary institution of high school grade.” The Regents of the University of the State of New York are the official State approving agency for public and private secondary schools in the State of New York. The action taken by the Regents *327 in 1930 with respect to the RLS School was, in effect, a registration or certification of the top four grades of the school as constituting an accredited high school. It was an approval of the curriculum offered by the RLS School for, and of the instruction given by the school in, the 9th, 10th, 11th, and 12th grades. The registration of the RLS School by the Regents of the University of the State of New York conferred certain privileges upon the school, such as giving Regents’ examinations to its pupils in grades 9-12, granting Regents’ diplomas to its graduates, and having its graduates admitted to certain colleges and universities without the necessity of their taking entrance examinations. The registration of the RLS School as an accredited day high school was continued after the acquisition of the school by the plaintiff in 1934.
(b) A high school course in the State of New York comprises a 4-year program of study which comes after the completion of the first eight school grades and which leads toward a high school diploma. The course of study is divided into four grades — the 9th, 10th, 11th, and 12th grades— and includes a sufficiently large number of subjects approved by the State Education Department, so that a student, by successfully taking and passing the subjects, can earn the minimum number of credits (16) required by the State Education Department for high school graduation, with the credits arranged in groupings to meet the further requirements of the State Education Department. The objective of a high school course is graduation from high school; and a student who is pursuing that objective by endeavoring to earn credits toward graduation is taking a high school course, even though he may never finally complete the course by graduating from high school.
(c) A 'high school curriculum in the State of New York may comprise an academic course designed for students who intend to go to college, a commercial course designed for students who intend to enter business or go to college, and a general course designed for students who do not have the intellectual capacity to take the academic course or the commercial course. The subjects constituting the general course are usually modified (i.e., less difficult) versions of subjects *328 in the academic course or the commercial course. However, a student receives credit toward high school graduation for successfully completing a subject in the general course, and he receives a general high school diploma upon completing the general course, just as a student receives an academic high school diploma upon completing the academic course or a commercial high school diploma upon completing the commercial course.
4. (a) After acquiring the ownership of the ELS School, the plaintiff operated it as a 12-year school until 1942 or 1943, when the six elementary grades were discontinued. Thereafter, the school continued to offer instruction in grades 7 through 12.
(b) The fact that the registration or accreditation of the ELS School covered only grades 9-12 did not affect the legal authority of the school to offer instruction in grades 7 and 8. The New York State Education Department was aware of such instruction and, by implication, approved it as providing a satisfactory foundation for entrance into high school.
5. Sometime in the early 1940’s, an evening summer school for adults was established 'by the ELS School.
6. (a) In order to provide educational benefits for veterans of World War II, the Congress legislatively expanded Veterans’ Eegulation No. 1(a)[8] by adding to it (among other provisions) a new Part VIII. This part was added on June 22, 1944, by Section 400 (b) of Title II of the Servicemen’s Eeadjustment Act of 1944 (58 Stat. 284, 287-290).
(b) Part VIII of Veterans’ Eegulation No. 1(a) provided in pertinent part as follows during the period involved in the present litigation:
1. Any person who served in the active military or naval service on or after September 16, 1940, and prior to the termination of the present war, and who shall have been discharged or released therefrom under conditions other than dishonorable, and who either shall have served ninety days or more * * * or shall have been discharged or released from active service by reason of an actual service-incurred injury or disability, shall be *329 eligible for and entitled to receive education or training under this part: Provided, That such, course shall be initiated not later than four years after either the date of his discharge or the termination of the present war, whichever is the later: Provided further, That no such education or training shall be afforded beyond nine years after the termination of the present war.[9]
2. Any such eligible person shall be entitled to education or training at an approved educational or training institution for a period of one year plus the time such person was in the active service on or after September 16, 1940, and before the termination of the war,
* * * but in no event shall the total period of education or training exceed four years: Provided, That his work continues to be satisfactory throughout the period, according to the regularly prescribed standards and practices of the institution * * *.[10]
3. (a) Such person shall be eligible for and entitled to such course of education or training * * * as he may elect, and at any approved educational or training institution at which he chooses to enroll * * * which will accept or retain him as a student or trainee in any field or branch of knowledge which such institution finds him qualified to undertake or pursue: Provided, That, for reasons satisfactory to the Administrator [of Veterans’ Affairs], he may change a course of instruction * *[11]
* * * $ *
4. From time to time the Administrator shall secure from the appropriate agency of each State a list of the educational and training institutions * * * within such jurisdiction, which are qualified and equipped to furnish education or training * * *, which institutions * * * shall be deemed qualified and approved to furnish education or training to such persons as shall enroll under this part * * *.[12]
5. (a) The Administrator shall pay to the educational or training institution * * * for each person enrolled * * * the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, * * * *330 as are generally required for the successful pursuit and completion of the course by other students in the institution: Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year * * *.[13]
*****
9. The Administrator of Veterans’ Affairs is authorized and empowered to administer this title * * *. Consistent with and subject to the provisions and limitations set forth in this title, the Administrator shall, from time to time, prescribe and promulgate such rules and regulations as may be necessary to carry out its purposes and provisions: Provided, That * * * no regulation or other purported construction of title II of the Servicemen’s Readjustment Act of 1914, as amended, shall be deemed consistent therewith which denies or is designed to deny to any eligible person, or limit any eligible person in, his right to select such course or courses as he may desire, during the full period of his entitlement or any remaining part thereof, in any approved educational or training institution or institutions * * *.[14]
* * * * *
11. (a) As used in this part, the term “educational or training institutions” shall include all public or private elementary, secondary, and other schools furnishing education for adults, business schools and colleges, scientific and technical institutions, colleges, * * * universities, and other educational institutions * * *.[15]
(c) With certain exceptions that are not pertinent to this litigation, approved educational and training institutions were not required to enter into formal written contracts with the Veterans Administration in order to participate in the program for the education and training of veterans under Part VIII of Veterans’ Regulation No. 1(a) during the period between June 22, 1944, and July 1, 1948. (For the *331 sake of convenience, the Veterans Administration, which administered Part VIII, will usually be referred to hereafter in the findings as “the VA.”)
7. (a) The VA prescribed the procedure that was to be followed under Part VIII of Veterans’ Regulation No. 1 (a), and such procedure is summarized in paragraph (b) of this finding, to the extent that it is pertinent to the present case.
(b) A veteran desiring to obtain the educational benefits provided for in Part VIII of Veterans’ Regulation No. 1(a) signed an application on a form prescribed by the VA and submitted the application, either in person or through the mail, to a field office of the VA. The application was reviewed by the VA field office; and if it appeared that the veteran was eligible for education or training under Part VIII, a certificate of eligibility and entitlement was executed by an official of the VA. This certificate indicated the length of time (in years, months, and days) that the veteran was entitled to receive education or training under Part VIII, and many certificates undertook to specify the course of study that the veteran could pursue. After the execution of this certificate, it was furnished to the veteran, who took it to the school or training establishment that he desired to attend. Upon admitting the veteran, the school or training establishment executed and forwarded to the VA a certificate with respect to the enrollment of the veteran. This certificate, which was on a form prescribed by the VA, stated (among other things) the date of the enrollment, the name of the course for which the veteran had been enrolled, the length of the course, and the estimated charges for the period of enrollment. At the bottom of the form on which the enrollment certificate was executed there appeared the following printed statement:
IMPORTANT. — This certification by the training institution or establishment becomes the basis for payment of all training benefits to, and in behalf of, this veteran. It is, therefore, imperative that the data contained herein be accurate in every respect and that the trainer notify the Veterans Administration promptly if this veteran interrupts, discontinues, or modifies the course of training described above in such a way as to affect the charges against his period of entitlement, subsistence allowance, or tuition.
*332 The school or training establishment thereafter submitted to the YA, at regular intervals during the veteran’s period of attendance, vouchers (on forms prescribed by the VA) for the veteran’s tuition and for the supplies furnished to him. Each voucher included the charges for a number of veterans, and indicated (among other things) the course of study that the veterans were pursuing. There was attached to the voucher a list showing the specific subjects that the several veterans were taking. The amounts sought in the vouchers were paid by the YA, to the extent that they were regarded as properly due.
8. Under the date of June 19,1946, the RLS School wrote a letter to an official of the YA in New York City, stating as follows:
The Robert Louis Stevenson School, exclusively a girls high school for forty years, announces the opening of its doors to ex-servicemen and women this fall. Recognizing the urgent need of training facilities for veterans, Stevenson has reorganized its curriculum to include a full-time afternoon and evening session. Arrangements have been made to accommodate 250 veterans for the fall term.
Fully accredited by the New York State Board of Regents, the school is offering an accelerated program of Regents and non-Regents subjects. Yeterans will be prepared for college entrance or occupations requiring a high school diploma.
Registrations are now being accepted.
9. The enrollment of veterans in the RLS School under Part YIII of Veterans’ Regulation No. 1(a) began in the fall of 1946.
10. In order that its regular program for the education of children might not be disrupted unduly by the admission of veterans, the RLS School established an evening school for adults only in the fall of 1946. Veterans who entered the RLS School in the fall of 1946 were admitted to the evening school. In the spring of 1947, however, the RLS School set up an adult section in the day school and admitted some veterans to the day school. At about the same time, the plaintiff decided to convert the day school gradually into a school for adults; and this program of con *333 version was thereafter carried out. The first step was to discontinue the giving of instruction in the 7th and 8th grades to children. Subsequently, the giving of instruction to children in other grades was discontinued on a gradual basis, until the entire ELS School, both the evening school and the day school, became an institution for the education of adults. The school continued, as before, to give instruction in grades 7 through 12. Its year was divided into a fall semester, a spring semester, and a summer term.
11. The vast majority of the adults who attended the ELS School during the period 1946-1952 were veterans receiving educational benefits under the provisions of Part VIII of Veterans’ Eegulation No. 1(a). It was the policy of the ELS School to accelerate the education of those veterans who were capable of absorbing the instruction effectively, so as to save, if possible, some of their entitlement under Part VIII for college or professional training. The school’s charges to the VA for tuition under Part VIII, however, were based upon the number of hours of instruction given to veterans, and not upon the number of credits earned by the veterans.
12. On January 16,1948, the Eegents of the University of the State of New York registered the evening school of the ELS School “as a High School maintaining an approved secondary program covering 9th-12th years * *
13. A regulation which was promulgated by the VA on May 17, 1948 (13 F.E. 2695, 2698) provided in part as follows:
(2) Effective July 1,1948, contracts [covering future payments to educational institutions for tuition, books, and supplies furnished to veterans under Part VIII of Veterans’ Eegulation No. 1(a)] will be required * * * where a majority of the enrollment of the institution consists of veterans in training * * * and where one of the following conditions prevails:
The institution has been established subsequent to June 22,1944.
* * * * .1!
In the negotiation of contracts as required in this subparagraph, it will be necessary for the school to submit cost data. Agreed contract rates will not exceed *334 rates determined by tbe Veterans’ Administration to be fair and reasonable * * *.[16]
14. As tbe day school of the RLS School was established prior to June 22, 1944, it was not subject to the provisions of the regulation quoted in finding 13. Accordingly, no written contracts for the training of veterans were ever entered into with the VA by the plaintiff on behalf of the day school. Tuition payments by the VA to the day school for the education of veterans under Part VIII of Veterans’ Regulation No. 1(a), throughout the period of time involved in the present case, were based upon the day school’s customary tuition charge. Through the early part of 1948, such customary tuition charge was $46.67 per subject per semester in the fall and spring semesters and $20 per subject in the summer term. Thereafter, it was $50 per subject per semester in the fall and spring semesters and $20 per subject in the summer term. In addition, the day school’s customary charges for supplies were assessed.
15. As the evening school of the RLS School was established subsequent to June 22, 1944, it was subject to the provisions of the regulation quoted in finding 13. A series of contracts was entered into with the VA by the plaintiff on behalf of the evening school, as follows:
Contract V3006V-542, covering the period September 1.1949-August 31,1950;
Contract V3006V-805, covering the period September 1.1950-August 31,1951; and
Contract V3006V-1162, covering the period September 1.1951-August 31,1952.
IS. (a) Contract V3006V-542, covering the period September 1, 1949-August 31, 1950, contained the following provisions (amongothers):
ARTICLE 1. INSTRUCTION
(a) The Contractor will provide instruction and the necessary boohs, supplies, and equipment therefor as set forth in paragraphs (c) and (d) below, during the period beginning September 1, 1950, and ending August 31, 1951, to such veterans described herein who may be *335 accepted or retained by the Contractor as students in such courses as the Contractor finds them qualified to undertake or pursue.
?}{ íJí # #
(c) The Contractor will provide such courses of instruction at the charges listed and described in Schedule I attached hereto, or as set forth in the catalogs, bulletins, or other publications or schedules which are submitted herewith and identified in Schedule I as a part of this Contract.
(d) The contractor will furnish outright to the veteran, as needed, such books, supplies, and equipment as are necessary for the satisfactory pursuit and completion of the courses as referred to in paragraph (c) above. * * #
(e) The Veterans Administration will eompensatethe Contractor for the books, supplies, and equipment provided in this Article as follows: Same as for other students at actual cost to the school * * *.
(b) Schedule 1 attached to contract V3006V-542 contained the following provisions:
SCHEDULE 1

Continuation of Article 1(c)

Courses as shown in the attached printed folder of Robert Louis Stevenson Evening School, time-stamped September 30, 1949, which is included in and made a part of this contract.

Regular Evening Course:

of Course — 41 weeks of 2 terms
One term, 20% weeks from 9-12-49 to 1-31-50
One term, 20% weeks from 2-1-50 to 6-23-50
(c) The printed folder of the RLS School referred to in Schedule 1 stated in part as follows:
Each Week shall consist of 25 hours of instruction of 5 hours per evening, Monday through Friday, 5:30 p.m. to 10:30 p.m.
Each term shall further consist of ninety (90) school days.
A. Course consists of a minimum of five subjects per term given in five sixty minute periods each evening, includ-one and one-half minutes for of class.
Tuition: $50.00 per subject per term — $500.00 per school year for a course of at least five subjects. In no event *336 may the tuition charges exceed $500.00 for any school year.

Summer Session:

Length of course — 7% weeks at 25 hours per week, 5 hours per evening, Monday through Friday from 5:40 p.m. to 11:00 p.m.
The school term shall consist of 35 school days in the Summer Session, from July 5, 1950 to August 25, 1950.
The course consists of 4 eighty minute periods per evening including five (5) minutes for change of class. Tuition: $20.00 per subject.
The school is in in continuous session except for all Federal and State legal holidays.
Late Begistration shall be permitted up to ten (10) school days without any reduction in the tuition charge.
CURRICULUM:
languages: English, French, Spanish, German. social sciences : Social Studies, The Economic World,
American and World History.
sciences: General Science, Biology, Chemistry, Earth Science, Physics, Health & Hygiene.
mathematics: General Mathematics, J.H.S. Mathematics, Elementary, Intermediate and Advanced Algebra, Plane and Solid Geometry, Trigonometry.
art : General, Basic, Drawing and Painting, Advanced Design, Comprehensive Art, Commercial Advertising, Costume Design and Illustration, Water Color, Oil Painting, Art History, Craft.
business : Introduction to Business, Bookkeeping, Business Arithmetic, Business Law, Business Management, Office Practice, Salesmanship, Shorthand, Typewriting, Secretarial Practice, Office Experience, Detailing.
Other Subjects as Bequired
DIPLOMA REQUIREMENTS
16 Units,* Including:
COLLEGE ENTRANCE GENERAL
4 units English; 4 units English;
2 units History & Social Studies; 1 unit American History; Other
2% units in Mathematics; Academic Subjects * * * or
3 units Science or Business Subjects * * * to
3 units in a Foreign Language make up a total of 16. 2 and 1 unit in Science. units are allowed for Basic or Boot Training.
*337 17. The provisions of contract V3006V-805, covering the period September 1, 1950-Angust 31, 1951, were similar to the provisions of contract V3006V-542, as set out in finding 16, except that the printed folder of the RLS School that was attached to contract V3006V-805 contained the following-provisions in lieu of those set out in paragraph (c) of finding 16:
CURRICULUM
ART: General, Basic, Drawing and Painting, Advanced Design, Comprehensive Art, Commercial Advertising, Costume Design and Illustration, Water Color, Oil Painting, Art History, Craft.
business : Introduction to Business, Bookkeeping, Business Arithmetic, Business Law, Business Management, Business Training, Economic Geography, Office Practice, Salesmanship, Shorthand, Typewriting, Secretarial Practice, Office Experience, Retailing.
English : J. H. S. English, Grades 9-12, Remedial. languages : French, Spanish, German, Latin. mathematics: General Mathematics, J. H. S. Mathematics, Elementary, Intermediate and Advanced Algebra, Plane and Solid Geometry, Trigonometry.
sciences: General Science, Biology, Chemistry, Earth Science, Physics, Health & Hygiene. social sciences : Social Studies, The Economic World, American Institutions, American and World History.
Other Subjects as Required
DIPLOMA REQUIREMENTS
16 Units,* Including
COLLEGE ENTRANCE GENERAL
4 units English; 4units English;
2 units History & Social Studies ; 1 unit American History; Other
2% units in Mathematics; Academic Subjects * * * or
3 units Science or Business Subjects * * * to
3 units in a Foreign Language and 1 unit in Science. make up a total of 16. 2 units are allowed for Basic or Boot Training.
18. The provisions of contract V3006V-1162, covering the period September 1, 1951-August 31, 1952, were similar to the provisions of contract V3006V-805.
*338 19. (a) Beginning in late 1948 or early 1949, the RLS School found itself facing a serious educational problem due to the fact that its student body included many Puerto Rican veterans with English-language deficiencies and other scholastic deficiencies as well. The student body also included numerous other veterans with poor educational backgrounds. For a time, the school endeavored ,to cope with this problem by assigning such veterans to the school’s regular classes dealing with subjects in grades 7 through 12, and giving these veterans special attention and instruction within the respective classes. This plan did not enable the problem students to cope with the several sub jects; it was a handicap to the other students in the classes to which the problem students were assigned; and it imposed an undue hardship on the teachers of such classes. The RLS School then established special classes in various subjects for the problem students. Some of the subjects involved in this special program were modified (i.e., less difficult) versions of the school’s regular 7th-, 8th-, 9th-, and 10th-grade subjects, particularly those in English and mathematics. Others were special subjects, usually of an elementary nature, that were not specifically related to the existing grades 7-12 in the RLS School. In devising the program of special subjects for problem students, the RLS School was following educational policies generally regarded as sound.
(b) Credit toward high school graduation was granted by the RLS School for the successful completion of the modified versions of 9th-grade and 10th-grade subjects. However, with respect to the modified versions of Tth-grade and 8th-grade subjects, and the other special subjects that were provided for problem students, high school credit was not granted. (A few exceptions to the general statement made in the preceding sentence will be noted in subsequent findings.)
(c) In establishing modified versions of the regular 7th-, 8th-, 9th-, and 10th-grade subjects in English for the scholastically deficient students, the RLS School adopted a plan whereby three semesters of instruction were given in each of these English subjects, instead of the two semesters of instruction per English subject traditionally given in the *339 regular classes. Under tlie 3-semester plan, the reading aspects of a particular English subject were emphasized during a semester in one class, the oral (or speech) aspects of the subject were emphasized during a semester in another class, and the written aspects of the subject were emphasized during a semester in still another class. Separate tuition charges were made for the three classes at the rate of $50 per class per semester. Different materials were studied in the different classes. A student who successfully completed the reading, oral, and written aspects of a modified 9th-grade or a modified 10th-grade English subject on the basis of three semesters of work was given only one credit (the equivalent of two semesters’ work in a regular class) in 9th-grade English or 10th-grade English, as the case might be, toward high school graduation.
20. Section 5 of the Act of July 13,1950 (64 Stat. 336,340) amended paragraph 11 of Part VIII of Veterans’ Regulation No. 1 (a) by adding at the end thereof the following new subparagraph:
(e)l. In order to secure or retain approval to train veterans, any school operated for profit which, during any period, has fewer than twenty-five students, or one-fourth of the students enrolled (whichever is larger), paying their own tuition, in addition to meeting all requirements of existing law, will be required to submit to the appropriate State approving agency a written application, in form and contents prescribed by the State approving agency, setting forth the course or courses of training. The written application covering each course must include the following:
a. Title of the course and specific description of the objective for which given.
b. Length of course.
c. A detailed curriculum showing subjects taught, type of work or skills to be learned, and approximate length of time to 'be spent on each.
_ d. A showing of educational and experience qualifications of the instructors.
e. A description of space, facilities, and equipment used for the course.
f. A statement of the maximum number of students proposed to be trained in the course at one time.
g. A statement of the educational prerequisite for such a course.
*340 2. The appropriate approving agency of the State or the Administrator may approve the application _ of such school when the school is found upon investigation to have met the following criteria:
a. The curriculum and instruction are consistent in quality, content, and length with similar courses in the public schools or other private schools with recognized and accepted standards.
b. There is in the school adequate space, equipment, instructional material, and instructor personnel to provide satisfactory training. When approval is given, it shall state the maximum number authorized to be trained in each course.
c. Educational and experience qualifications of the instructor are adequate as determined by the State approval agency.
d. Adequate records are kept to show attendance, progress, and conduct, with periodic report to be provided to the Veterans’ Administration; and there are clearly stated and enforced standards of attendance, progress, and conduct.
e. Appropriate credit is given for previous training or experience, with training period shortened proportionately. No course of training will be considered bona fide as to a veteran who is already qualified by training and experience for the course objective.
f. A copy of curriculum as approved is provided to the veteran and the Veterans’ Administration by the school.
g. Upon completion of the training, the veteran is given a certificate by the school indicating the approved course, title, and length, and that the training was completed satisfactorily.
h. Such additional criteria established by the State approving agency as it may deem necessary for approval of schools training veterans under this part.
ifi i\t #
4. The Veterans’ Administration is not authorized to award benefits under this part if it is found by the appropriate State approving agency that the course offered by a school operated for profit fails to meet the applicable requirements of this subparagraph (e) ; but the findings of the State approving agency on such requirements shall be final.
21. Although officials of the RLS School were aware of the enactment of the legislation referred to in finding 20, and of the applicability of such legislation to the school, no appli *341 cation for approval under that legislation was submitted on behalf of the school to the State Education Department of the State of New York during a period of almost 2 years following the enactment of the legislation, and no effort was made to obtain from the State Education Department an appropriate form on which to submit an application. The State Education Department already had in its files, in connection with the prior approval of the day school and the evening school for accreditation purposes, the annual reports made by the school to the State Education Department, and inspections of the school made by representatives of the State Education Department, much of the information concerning the RLS School that was called for by the legislation of July 13,1950.
22. By means of a communication dated May 19,1952, and received on May 21, 1952, the State Education Department of the State of New York informed the manager of the regional office of the VA for New York State that the RLS School was withdrawn from the list of schools approved for the education and training of veterans, because of the failure of the school to file an application for approval under the provisions of the legislation referred to in finding 20.
23. On May 23, 1952, the acting manager of the VA regional office in New York City notified the RLS School as follows, by registered mail:
On May 21,1952 the Veterans Administration received a letter from the New York State Education Department notifying the Manager of this Regional Office that the approval of the Robert Louis Stevenson School * * * for the training of veterans under the provisions of the Servicemen’s Readjustment Act of 1944, as amended, had been withdrawn.
Action has been taken by the appropriate officials of our Vocational Rehabilitation and Education Division to notify by letter each individual veteran student enrolled at your institution that his training was discontinued effective May 21, 1952, owing to the withdrawal of the approval of your institution for the training of veterans.
No further enrollment or re-enroEment of veterans will be authorized at your institution while its status continues as “not approved for veteran training.”
*342 Any questions concerning this action should be directed to Mr. W. A. Gillcrist, Chief of the Vocational Rehabilitation and Education Division of this office.
24. On May 24, 1952, the day after the letter of May 23, 1952, from the VA regional office was received, an official of the RLS School went to Albany, New York, for the purpose of obtaining from the New York State Education Department a form upon which to submit an application for continued approval of the school under the legislation of July 13, 1950. He was informed by the State Education Department that no special form for use in applying for approval under the legislation of July 13,1950, had been prescribed by the State Education Department, but he was furnished a form entitled “Application for Admission or Advancement of a Secondary School,” which was the form customarily used by secondary schools in connection with registration for accreditation purposes. In addition, he was informed that a supplemental application form would be forwarded to the RLS School shortly thereafter. Such a supplemental application form, prepared on a typewriter, was later transmitted by the State Education Department to the RLS School, and was received on May 27 or 28, 1952.
25. As soon as possible after the events referred to in finding 24, the RLS School’s application for approval under the legislation of July 13, 1950, was prepared and submitted to the New York State Education Department. It was received by the latter on or about June 2, 1952.
26. Sometime between June 2 and 26, 1952, the plaintiff sold the RLS School to a new owner. The latter then submitted to the New York State Education Department a new application for the approval of the RLS School under the legislation of July 13, 1950.
27. The RLS School was approved under the legislation of July 13,1950, by the New York State Education Department as of June 26,1952. This approval was based upon the application of the new owner, and after such owner had agreed to make certain changes in the curriculum of the school.
28. (a) A suit was filed on May 23, 1952, in the United States District Court for the Southern District of New York by the plaintiff against certain officials of the VA. On the *343 same day, the court issued a temporary restraining order, pending the holding of a hearing on the plaintiff’s motion for a preliminary injunction. The order restrained the defendants “from interfering in any way with the right of the plaintiff to act as a duly approved school under the rules and regulations of the Veterans Administration * * * .”
(b) A hearing on the plaintiff’s motion for a preliminary injunction was held on May 27, 1952. Two days later, on May 29, 1952, the motion was denied by the district court.
(c) Thereupon, an appeal was taken by the plaintiff to the United States Court of Appeals for the Second Circuit. That court on June 2, 1952, issued a stay, which had the effect of continuing the temporary restraining order pending the appeal.
29. The litigation referred to in finding 28 was terminated on June 30, 1952, by agreement of the parties, after the VA had announced its intention to approve the RLS School under the legislation referred to in finding 20.
30. The period of time covered by the petition in this case began with the RLS School’s fall semester in 1949 and continued through the school’s spring semester in 1952. The plaintiff asserts that, during such period, the VA declined to pay many vouchers that were submitted to the agency by the RLS School for the tuition of, and for supplies furnished to, veterans who were attending the school under certificates of eligibility and entitlement executed by the VA. It is alleged in the petition that these unpaid vouchers total $314,769.13. The defendant admits the failure to pay numerous vouchers submitted by the RLS School during the 1949-1952 period mentioned above, but the defendant contends that the school was not entitled to receive payment on such vouchers. Furthermore, the defendant asserts a counterclaim against the plaintiff in the sum of $456,986.55, on the ground that the RLS School was overpaid on the basis of overcharges made in many other vouchers that were submitted by the school under Part VIII of Veterans’ Regulation No. 1(a) during the period while the plaintiff was the owner of the school.
31. In order to illustrate its contentions, the defendant selected and presented evidence concerning the cases of 10 veterans who were enrolled in the RLS School. The facts *344 concerning these illustrative cases are set out in findings 32-41.
32. (a) The veteran George Baskins, Jr., was a student in the RLS School during part of the 1951 spring semester, the 1951 summer term, the 1951 fall semester, and the 1952 spring semester. The certificate of eligibility and entitlement which the VA issued to this veteran, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for academic H. S. [High School] course at Robert L. Stevenson school * * The certificate that was executed by an official of the RLS School in connection with Baskins’ enrollment gave the name of the course for which he was enrolled as “High School-Academic.” The vouchers that the RLS School submitted to the VA in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course,” but the specific subjects taken by him were listed in attachments to the vouchers.
(b) Baskins was enrolled in five classes in the spring semester of 1951. These included: a class in a modified version of 8th-grade English designated as English 8-Jr. (Reading), in which Baskins received a grade of 85; a class in a modified version of 8th-grade English designated as English 8-Jr. (Written), in which he received a grade of 85; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., in which he received a grade of 65 (which was the passing mark in the RLS School); and a class in a special mathematics subject designated as Mathematics-Jr., in which he received a grade of 75. The evidence does not disclose the nature of the fifth class, except that the VA regarded the subject as being at the high school level. The defendant asserts in the present litigation a counterclaim against the plaintiff for $36.78, representing the tuition that was paid by the VA to the RLS School in connection with the two English classes. It is the defendant’s contention that the RLS School was legally obligated to enroll Baskins only for high school subjects.[17]
*345 (c) Baskins was enrolled in four classes in the summer term of 1951. They were: a class in a modified version of 8th-grade English designated as English 8-Jr. (Written), in which Baskins received a grade of 70; a class in a modified version of 8th-grade English designated as English 8-Jr. (Oral), in which he received a grade of 65; a class hi a modified version of 8th-grade mathematics designated as Mathematics 8-A, in which he received a grade of 75; and a class in a modified version of 8th-grade mathematics designated as Mathematics 8-B, hi which he received a grade of 70. The defendant asserts a counterclaim for $85.56, representing amounts that were paid by the VA to the ELS School for tuition ($80) and supplies ($5.56) in connection with these four classes, on the ground that the English and the mathematics were not high school subjects.
(d) Baskins was enrolled in five classes in the fall semester of 1951. They were: a class in a modified version of 8th-grade English designated as English 8 (Eeading), in which Baskins received a grade of 90; a class in a modified version of 8th-grade English designated as English 8 (Written), in which he received a grade of 70; a class in a modified version of 8th-grade English designated as English 8-Jr. (Oral-Written), in which he received a grade of 70 (see paragraphs (b) and (c) of this finding); a class in Mathematics 8-B, in which he received a grade of 75 (see paragraph (c) of this finding); and a class in 7th-grade mathematics, in which he received a grade of 80. The defendant asserts a counterclaim for $250, representing the total amount that was paid by the VA to the ELS School as tuition in connection with these five classes, on the ground that the subjects mentioned were not high school subjects.
(e) Baskins was enrolled in five classes in the spring semester of 1952. They were: a class in a modified version of 8th-grade English designated as English 8-S (Written), in which Baskins received a grade of 85 (see paragraphs (b), (c), and (d) of this finding); a class in a modified version of 8th-grade English designated as English 8-S (Oral), in which he received a grade of 90; a class in a modified version of 8th-grade English designated as English 8-S (Eeading), in which he received a grade of 90; a class in Mathematics *346 8-B, in which, he received a grade of 65 (see paragraphs (c) and (d) of this finding); and a class in a special subject designated as General Mathematics, in which he received a grade of 65. The RLS School submitted to the VA a tuition claim in the amount of $250 for these five classes. The claim was disallowed by the YA on the ground that the subjects mentioned were not high school subjects; and, to the extent of $67.50, the claim was also rejected on the ground that this amount covered tuition for the period after the approval of the RLS School was withdrawn on May 21,1952. The plaintiff is suing for the $250 in the present litigation.
33. (a) The veteran Juan Orengo attended the RLS School during the period beginning with the spring semester of 1948 and continuing through part of the spring semester of 1952. The certificate of eligibility and entitlement issued by the VA to this veteran did not specify the course of instruction that he might pursue. However, the certificate that was executed by an official of the RLS School in connection with Orengo’s enrollment certified that he was enrolled for a “High School Course”; and the vouchers that were executed by the school in order to receive payments for his tuition and for supplies that were furnished to him indicated that he was taking a “High School Course” (although the specific subjects which he took were listed).
(b) Orengo took five subjects in the spring semester of 1948. The evidence does not disclose the nature of these subjects, except that they were regarded by the YA as being at the high school level.
(c) Orengo took four subjects in the summer term of 1948. These subjects were regarded by the YA as being at the high school level.
(d) In the fall semester of 1948, Orengo was enrolled in five classes. These were: two classes in a special subject designated as General Mathematics, in which Orengo received grades of 90 and 75; two classes in the regular 9th-grade English subject, designated as English 1-2, for which grades of 90,80,75, and 75 were recorded;[18] and a class in 10th-grade English, in which he received a grade of 80. The YA paid *347 the RLS School $93.74 as tuition and $2.47 for supplies with respect to the two classes in General Mathematics; and the defendant asserts a counterclaim for these amounts on the ground that the RLS School was authorized to enroll Orengo only for high school subjects, and that General Mathematics was not a high school subject. The defendant also asserts a counterclaim for the tuition that was paid ($46.87) and for the amount that was paid for supplies ($1.24) in connection with one of the two classes in 9th-grade English. With regard to the second counterclaim, the defendant assumes that the two classes in 9th-grade English covered the same subject matter and were repetitive of each other. There is no direct evidence on this point; and the inference is warranted that one class covered the first semester’s work in 9th-grade English (a 2-semester subject) and the other class covered the second semester’s work in the same subject.
(e) Orengo took five subjects in the spring semester of 1949. The evidence does not disclose the nature of these subjects, except that they were regarded 'by the VA as being at the high school level.
(f) In the summer term of 1949, Orengo took four subjects. One of these was a special subject designated as General Mathematics 5, in which he received a grade of 65. The evidence does not disclose the nature of the other three subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for the tuition that was paid ($20) and for the amount that was paid for supplies ($1.15) in connection with General Mathematics 5, on the ground that General Mathematics 5 was not a high school subj ect.
(g) Orengo was enrolled in five classes in the fall semester of 1949. They included: three classes in a special subject designated as English Fundamentals, for which no grades were recorded; and a class in General Mathematics 5, in which Orengo received a grade of 80 (see paragraph (f) of this finding). The evidence does not disclose the nature of the fifth class, except that the subject was regarded by the YA as being at the high school level. The defendant asserts a counterclaim in the amount of $200 for the tuition that was paid in connection with the three classes in English Funda *348 mentals and the class in General Mathematics 5, on the ground that these were not high school subjects.
(h) Orengo took five subjects in the spring semester of 1950. These included: a special subject designated as English 6 AB/6W, for which no grade was recorded; General Mathematics 5, in which he received a grade of 65 (see paragraphs (f) and (g) of this finding); and Spanish 7-8, in which he received a grade of 80. The evidence does not disclose the nature of the other two subjects, except that they were regarded by the VA as being at the high school level. A counterclaim is asserted by the defendant in the amount of $100, representing the tuition that was paid for English 6 AB/6W and General Mathematics 5, on the ground that these subjects were not high school subjects.
(i) In the summer term of 1950, Orengo took four subjects. These included: a modified version of 7th-grade English designated as English 7-AB, in which he received a grade of 70; a special subject designated as JHS Mathematics 7-8, in which he received a grade of 80; and Spanish 7-8, in which he received a grade of 80 (see paragraph (h) of this finding). The evidence does not disclose the nature of the fourth subject, except that it was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for the tuition in the amount of $20 that was paid for English 7-AB, and for the payment that was made for supplies furnished to Orengo in connection with this same subject.[19]
(j) Orengo was enrolled in five classes in the fall semester of 1950. These were: a class in a modified version of 7th-grade English designated as English 7-A, in which he received a grade of 75 (see paragraph (i) of this finding); a class in a modified version of 7th-grade English designated as English 7-B, in which he received a grade of 70; two classes in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., in which he received a grade *349 of 75,[20] and a class in Spanish 8, for which no grade was recorded. The defendant asserts a counterclaim for the full amount of the tuition that was paid ($250), and for the full payment that was made for supplies ($8.27), in comiection with these five classes. The counterclaim with respect to the English and mathematics classes (tuition $200, supplies $6.62) is based on the ground that these subjects were not high school subjects. The counterclaim with respect to the Spanish class (tuition $50, supplies $1.65) is based upon the assumption that the instruction in Spanish 8 was a repetition of the instruction previously given to Orengo in Spanish 7-8 during the spring semester and summer term of 1950. There is no evidence bearing directly on the question of the alleged repetition; and the inference is warranted that Spanish 8 was not repetitive of Spanish 7-8.
(k) Orengo was enrolled in five classes in the spring semester of 1951. These included: a class in a modified version of 8th-grade English designated as English 8 (Written) , in which he received a grade of 70; a class in a modified version of 8th-grade English designated as English 8 (Oral), in which he received a grade of 70; a class in Mathematics 7-Jr., in which he received a grade of 65 (see paragraph (j) of this finding); and a class in Spanish 7, in which he received a grade of 80. The evidence does not disclose the nature of the fifth subject, except that it was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for the tuition ($100) that was paid in connection with the two English classes, and for the amount that was paid for supplies furnished to Orengo in connection with these classes.[21] The defendant contends that the English was not at the high school level. The defendant also asserts a counterclaim for the tuition that was paid ($50) and for the payment for supplies ($2) that were furnished in connection with the class in Spanish 7. This second counterclaim is based upon the assumption *350 that the instruction that was given to Orengo in Spanish 7 was a repetition of instruction previously given to him in Spanish 7-8 during the spring semester and summer term of 1950. There is no direct evidence on the matter of the alleged repetition; and an inference is warranted that Spanish 7 was not repetitive of Spanish 7-S.[22]
(l) In the summer term of 1951, Orengo was enrolled in three classes for the entire term and he was enrolled in two other classes for part of the term. These were: a class in English 6 AB/6W, for which no grade was recorded (see paragraph (h) of this finding) ; a class in a modified version of 7th-grade English designated as English 7 (Oral), in which he received a grade of 75 (see paragraphs (i), (j),and (k) of this finding); a class in a modified version of 7th-grade English designated as English 7 (Written), which he attended for part of the term only and for which no grade was recorded; a class in a special subject designated as Mathematics Fundamentals, in which he received a grade of 70; and a class in a special English subject designated as Great Books, which he attended for part of the term only and in which he received a grade of 50. The defendant asserts a counterclaim for the tuition ($80) that was paid in connection with these classes, and for the amount that was paid for supplies furnished to Orengo in connection with the same classes ($7). It is the defendant’s contention that the subjects mentioned were not high school subjects.
(m) Orengo was enrolled in five classes in the fall semester of 1951. These were: a class in English 7 (Oral), in which he received a grade of 70 (see paragraph (1) of this finding); a class in English 7 (Written), in which he received a grade of 70 (see paragraph (1) of this finding) ; a class in a modified version of 7th-grade English designated as English 7 (Beading), in which he received a grade of 70; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-A, in which he received a grade of 90; and a class in Social Studies 8, for which no grade was recorded. The ELS School submitted to the VA a claim *351 for tuition in the amount of $233.65, and a claim in the amount of $6.42 for the furnishing of supplies to Orengo in connection with these five classes. The tuition claim was disallowed by the VA to the extent of $183.65, and the supplies claim was disallowed to the extent of $5.05. These disallowances related to the classes in English and mathematics, and were based on the ground that these subjects were not high school subjects. The plaintiff is suing for the $183.65 and the $5.05 in the present action.
(n) Orengo was in attendance at the ELS School for only part of the spring semester of 1952. He was enrolled in five classes, and no grades were recorded for any of the subjects. They were: a class in English 7 (Oral) (see paragraphs (1) and (m) of this finding); a class in English 7 (Written) (see paragraphs (1) and (m) of this finding); a class in English 7 (Eeading) (see paragraph (m) of this finding); a class in a modified version of 7th-grade mathematics designated as Mathematics 7-A; and a class in Social Studies 8 (see paragraph (m) of this finding). The ELS School submitted a tuition claim of $82.50 and a supplies claim of $6.47 in connection with the instruction that was given and the supplies that were furnished to Orengo during the spring semester of 1952. The claim was disallowed by the VA. The tuition claim was disallowed to the extent of $66, and the supplies claim was disallowed to the extent of $5.18, on the ground that the classes in English and mathematics were not part of a high school course. The tuition claim was disallowed to the extent of $16.50 and the supplies claim was disallowed to the extent of $1.29 on the ground that the instruction in Social Studies 8 was repetitive of the instruction in Social Studies 8 which the veteran had received in the fall semester of 1951. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer either that the instruction which was given to Orengo in Social Studies 8 during the fall semester of 1951 covered the first semester’s work in a 2-semester subject and the instruction that was given to him in the spring semester of 1952 covered a portion of the second semester’s work in the same subject, or that Orengo failed to pass this subject in the fall semester of 1951 and was properly repeat *352 ing it in the spring semester of 1952. The plaintiff is suing for the $82.50 and the $6.47 in the present action.
34. (a) The veteran Juan Colon Ortiz attended the RLS School from the spring semester of 1949 through the spring semester of 1952. The certificate of eligibility and entitlement which was issued to this veteran by the VA did not specify the nature of the course that he might take. However, the certificate that was executed by an official of the RLS School in connection with his enrollment gave the name of the course for which he was enrolled as “High School”; and the vouchers that were submitted by the RLS School in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) No question is raised in the present litigation by the defendant with respect to the spring semester of 1949.
(c) Colon Ortiz was enrolled in four classes in the summer term of 1949. These included two classes in 9th-grade English, in which Colon Ortiz received grades of 70 and 65. The defendant asserts a counterclaim for $20, representing the tuition that was paid in connection with one of these two English classes, and for $2.11, representing the amount that was paid for supplies in connection with the same class. The defendant assumes that the two classes in 9th-grade English were repetitive of each other. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that one of the classes covered the first semester’s work in a 2-semester subject, and that the other class covered the second semester’s work in the same subject. No other question is raised by the defendant with respect to the summer term of 1949.
(d) Colon Ortiz took five subjects in the fall semester of 1949. These included a special subject designated as General Mathematics 4, in which Colon Ortiz received a grade of 80. The evidence does not disclose the nature of the other subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $50, representing the tuition that was paid in connection with General Mathematics 4, it being the defendant’s contention that the RLS School was legally re *353 quired to enroll Colon Ortiz for bigli school subjects only, and that this subject was not a high school subject.[23]
(e) Colon Ortiz was enrolled in five classes in the spring semester of 1950. They included: two classes in a special English subject designated as English 5-AB/6 (Oral-Written), for which no grade was recorded; and a class in General Mathematics 4, in which he received a grade of 80 (see paragraph (d) of this finding). The evidence does not disclose the nature of the other classes, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $150, representing the tuition that was paid in connection with the English and mathematics classes, it being the defendant’s contention that these subjects were not high school subjects.
(f) Colon Ortiz was enrolled in four classes in the summer term of 1950. They included two classes in a special mathematics subject designated as JHS Mathematics 7-8, in which he received grades of 70 and 65. The nature of the other subjects that were taken in the summer term of 1950 is not disclosed by the evidence, except that they were regarded by the VA as being at the high school level. The defendant aserts a counterclaim for $40, representing the tuition that was paid in connection with the classes in JHS Mathematics 7-8, and for $3.80, representing the amount that was paid for supplies in connection with the same classes. It is the defendant’s contention that JHS Mathematics 7-8 was not a high school subject.
(g) Colon Ortiz took five subjects in the fall semester of 1950. They included: a special English subject designated as English 5A-6A, for which no grade was recorded; a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., in which he received a grade of 70; a special mathematics subject designated as Mathematics 7-8-Jr., in which he received a grade of 80; and an art subject, in which he received a grade of 65. The nature of the fifth subject is not disclosed by the evidence, except that it was regarded by the VA as being at the high school level. *354 The defendant asserts a counterclaim for $150, representing the tuition that was paid in connection with the English and mathematics subjects, it being the defendant’s contention that these subjects were not high school subjects.
(h) Colon Ortiz was enrolled in five classes in the spring semester of 1951. They were: a class in a special English subject designated as English 6 (Written), for which no grade was recorded; a class in a special English subject designated as English 6 (Reading), for which no grade was recorded; a class in a special English subject designated as English 6 (Oral), for which no grade was recorded; a class in Mathematics 7-8-Jr., in which he received a grade of 50 (see paragraph (g) of this finding); and an art class, in which he received a grade of 75. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with the English and mathematics classes, it being the defendant’s contention that these subjects were not high school subjects.
(i) Colon Ortiz took four subjects in the summer term of 1951. They were: English 6 (Written), for which no grade was recorded (see paragraph (h) of this finding); a special subject in English designated as Great Books, for which no grade was recorded; 7th-grade mathematics, in which he received a grade of 80; and an art subject, in which he received a grade of 70. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the English and mathematics subjects, and for $12, representing the amount that was paid for supplies in connection with these same subjects. It is the defendant’s contention that the English and mathematics were not high school subjects. The defendant also asserts a counterclaim for $20, representing the amount that was paid for tuition in connection with the art subject, and for $4, representing the amount that was paid for supplies furnished to Colon Ortiz in connection with the art subject. The defendant assumes that the art subject which Colon Ortiz took in the summer term of 1951 was repetitive of the art instruction which he had previously received in the fall semester of 1950 or the spring semester of 1951. There is no direct evidence in the record on the issue of the alleged repetition. During the period involved in the present litigation, the curriculum *355 of the RLS School included a number of different subjects in the field of art. They were designated as General Art, Basic Art, Drawing and Painting, Advanced Design, Comprehensive Art, Commercial Advertising, Costume Design and Illustration, Water Color, Oil Painting, Art History, and Craft. The subjects mentioned were not repetitive of each other. These were high school subjects and, upon the completion of one of these subjects by a student, an appropriate unit of credit toward high school graduation was entered upon the student’s record card under the designation of “Art,” without any indication of the particular art subject which the student had taken. Hence, it is reasonable to infer that the art subject which Colon Ortiz took in the summer term of 1951 covered material different from that covered by the art subjects which he had previously taken in the fall semester of 1950 and in the spring semester of 1951.
(j) Colon Ortiz was in attendance at the RLS School for only part of the fall semester in 1951. He was enrolled in five classes. They were: a class in a special English subject designated as English 5 (Reading), for which no grade was recorded; a class in a special English subject designated as English 5 (Oral), for which no grade was recorded; a class in a special English subject designated as English 5 (Written), for which no grade was recorded; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-A, in which he received a grade of 85; and an art class, in which he received a grade of 85. The RLS School submitted a tuition claim for $149.03 in connection with the classes mentioned, and the claim was disallowed by the VA. To the extent of $119.23, the disallowance was based upon the ground that the English and mathematics were not high school subjects; and to the extent of $29.80, the disallowance was based upon the assumption that the art subject which Colon Ortiz took in the fall semester of 1951 was repetitive of art subjects which he had previously taken. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that the art subject which Colon Ortiz took in the fall semester of 1951 covered material different from that covered by the art subjects which he had previously taken. The plaintiff is suing for the $149.03 in the present action.
*356 (k) Colon Ortiz was enrolled in five classes in the spring semester of 1952. They were: a class in English 6 (Written) , for which no grade was recorded (see paragraphs (h) and (i) of this finding); a class in English 6 (Reading), for which no grade was recorded (see paragraph (h) of this finding); a class in English 6 (Oral), for which no grade was recorded (see paragraph (h) of this finding); a class in a modified version of 7th-grade mathematics designated as Mathematics 7-B, in which he received a grade of 65; and an art class, in which he received a grade of 65. The RLS School submitted a tuition claim for $250 in connection with the classes mentioned in this paragraph. The claim was disallowed by the YA to the extent of $200 on the ground that the English and mathematics were not high school subjects, and it was disallowed to the extent of $50 on the ground that the art subject was repetitive of art instruction which Colon Ortiz had previously received. In addition, the YA partially disallowed the overall tuition claim to the extent of $67.50 on the further ground that this amount related to the period after approval of the RLS School was withdrawn on May 21, 1952. There is no direct evidence in the record on the issue of the alleged repetition of the instruction in art. It is reasonable to infer that the art subject which Colon Ortiz took in the spring semester of 1952 covered material different from that covered by the art subjects which he had previously taken. The plaintiff is suing for the $250 in the present action.
35. (a) The veteran Walter Crowder attended the RLS School during the period beginning with the spring semester of 1950 and continuing through part of the spring semester of 1952. The certificate of eligibility and entitlement which was issued to this veteran by the YA, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for course leading to High School diploma at Robert Louis Stevenson School.” The certificate that was executed by an official of the RLS School in connection with Crowder’s enrollment gave the name of the course for which he was enrolled as “High School.” The vouchers that the RLS School submitted to the VA in obtaining payments for this veteran’s tuition and for supplies furnished to him indi *357 cated that he was taking a “High School Course” (hut the specific subjects taken were listed).
(b) Crowder was enrolled in four classes in the spring semester of 1950. These included: a class in a special English subject designated as English 5, in which he received a grade of 60; and two classes in a special mathematics subject designated as General Mathematics 4, for which no grade was recorded. The evidence does not disclose the nature of the fourth subject, except that it was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $65.54, representing the tuition that was paid in connection with the English and mathematics classes, and for $3.98, representing the amount that was paid for supplies furnished to Crowder in connection with these same classes. It is the defendant’s contention that the ELS School was legally obligated to limit Crowder’s enrollment to high school subjects, and that the subjects mentioned were not high school subjects.
(c) Crowder was enrolled in three classes in the summer term of 1950. They were: two classes in a modified version of 7th-grade English designated as English 7-AB, in which he received grades of 95 and 80; and a class in a special subject designated as JHS Mathematics, for which no grade was recorded. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with these classes, and for $9.26, representing the amount that was paid for the supplies furnished to the veteran in connection with these classes. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(d) Crowder was enrolled in four classes in the fall semester of 1950.[24] They included: two classes in a modified version of 8th-grade English designated as English 8 AB-Jr. (Oral-Written), in which he received grades of 90 and 85; and a class in a special subject designated as JHS Mathematics 7-8, in which he received a grade of 65. The evidence does not disclose the nature of the fourth subject, except that it was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $150, representing *358 the tuition that was paid in connection with the English and mathematics classes, and for $8.26, representing the amount that was paid for supplies furnished to Crowder in connection with these same classes. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(e) Crowder was enrolled in five classes in the spring semester of 1951.[25] They included: two classes in English 7-AB, for which no grade was recorded (see paragraph (c) of this finding); a class in a modified version of 8th-grade English designated as English 8-Jr. (Beading), for which no grade was recorded; and a class in a special subject designated as Mathematics Fundamentals, in which he received a grade of Y5. The evidence does not disclose the nature of the fifth class, except that the subject was regarded by the YA as being at the high school level. The defendant asserts a counterclaim for $179.90, representing the tuition that was paid in connection with the English and mathematics classes, and for $7.83, representing the amount that was paid for supplies furnished to Crowder in connection with these same classes. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(f) Crowder was enrolled in three classes in the summer term of 1951. They were: two classes in English 8 AB-Jr. (Oral-Written), in which he received grades of 70 and 65 (see paragraph (d) of this finding); and a class in JHS Mathematics 7-8, in which he received a grade of 50 (see paragraph (d) of this finding). The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with these classes, and for $4.66, representing the amount that was paid for supplies furnished to Crowder in connection with the same classes. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(g) Crowder was enrolled in four classes in the fall semester of 1951. They were: a class in a modified version of 8th-grade English designated as English 8-JS (Oral), in which he received a grade of 65; a class in a modified version of 8th-grade English designated as English 8-JS *359 (Reading), in which he received a grade of 70; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-B, in which he received a grade of 85; and a class in a modified version of 7th-grade mathematics designated as Mathematics 7-A, in which he received a grade of 85. The RLS School submitted to the YA a claim for tuition in the amount of $178.86 with respect to these classes, and a claim in the amount of $7.69 for the furnishing of supplies to Crowder in connection with the same classes. The claims were disallowed by the YA on the ground that the subjects mentioned were not high school subjects. The plaintiff is suing for the $178.86 and the $7.69 in the present action.
(h) Crowder took five subjects for varying lengths of time in the spring semester of 1952. They were: a modified version of 8th-grade English designated as English 8-S (Written); Mathematics 7-B (see paragraph (g) of this finding); a modified version of 8th-grade mathematics designated as Mathematics 8-A; a modified version of 9th-grade English designated as English 9 (Oral); and typing. No grades were recorded for these subjects. The RLS School submitted to the YA a claim for tuition in the amount of $93, and a claim in the amount of $6.94 for supplies furnished to Crowder, in connection with the subjects previously mentioned. The tuition claim was disallowed by the VA to the extent of $62, and the supplies claim was disallowed to the extent of $4.63, on the ground that the subjects other than English 9 (Oral) and typing were not high school subjects. The plaintiff is suing for the $62 and the $4.63 in the present action.
36. (a) The veteran Horace Wise attended the RLS School for approximately 2 years. His attendance began in the spring semester of 1950, but he was enrolled for part of this semester only. It ended in the spring semester of 1952, but again he was enrolled only for part of this semester. The certificate of eligibility and entitlement which was issued by the YA to this veteran, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for Academic Course, at the Robert Louis Stevenson School.” The certificate that was executed by an *360 official of tbe RLS School with respect to his enrollment gave the name of the course for which he was enrolled as “High School.” The vouchers that the RLS School submitted to the VA in obtaining payments for Wise’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) Wise took five subjects while attending the RLS School for part of the spring semester in 1950. They included : a special subject designated as English 6, for which no grade was recorded; and a special subject designated as General Mathematics, in which he received a grade of 65. The evidence does not disclose the nature of the other three subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $38.84, representing the tuition that was paid in connection with the English and mathematics subjects previously mentioned. It is contended by the defendant that the RLS School could properly enroll Wise for high school subjects only, and that the English and mathematics were nothigh school subjects.
(c) In the summer term of 1950, Wise was enrolled in four classes. These included: two classes in a modified version of 7th-grade English designated as English 7-AB-Jr. (Oral-Written), in which he received grades of 65 and 65; and a class in a special subject designated as Mathematics Fundamentals, in which he received a grade of 65. The evidence does not disclose the nature of the fourth class, except that it was in a subject that was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the English and mathematics classes previously mentioned, and for $8.45, representing the amount that was paid for supplies furnished to Wise in connection with the same classes. It is contended by the defendant that these subjects were not high school sub j ects.
(d) Wise was enrolled in five classes in the fall semester of 1950. They were: two classes in English 7-AB-Jr. (Oral-Written) , in which he received grades of 70 and 70 (see paragraph (c) of this finding); a class in a special English *361 subject designated as Great Books-Remedial, for which no grade was recorded; a class in a special mathematics subject designated as JHS Mathematics 7-8, in which he received a grade of 70; and a class in 8th-grade history, for which no grade was recorded. The defendant asserts a counterclaim for $250, representing the tuition that was paid in connection with these five classes. It is contended 'by the defendant that the subjects mentioned were not high school subjects.
(e) Wise was enrolled in five classes in the spring semester of 1951. They were: a class in Great Books-Remedial, for which no grade was recorded (see paragraph (d) of this finding) ; a class in a modified version of the 8th-grade English designated as English 8-Jr. (Reading), in which he received grades of 70 and 70;[26] a class in a modified version of Tth-grade English designated as English 7-Jr. (Written), in which he received a grade of 70; and two classes in JHS Mathematics 7-8, in which he received a grade of 65 [27] (see paragraph (d) of this finding). The defendant asserts a counterclaim for $250, representing the tuition that was paid in connection with these five classes, on the ground that the subjects mentioned were not high school subjects.
(f) Wise was enrolled in four classes in the summer term of 1951. They included: two classes in English 7-AB Jr. (Oral-Written), in which he received grades of 70 and 70 (see paragraphs (c) and (d) of this finding); and a class in JHS Mathematics 7-8, in which he received grades of 65 and 85[28] (see paragraphs (d) and (e) of this finding). The evidence does not disclose the nature of the subject that was taken in the fourth class, except that it was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the classes in English and mathematics previously mentioned, and for $6.92, representing the amount that was paid for supplies furnished to Wise in connection with the same classes. The defendant contends that the subjects mentioned were not high school subjects.
*362 (g) In the fall semester of 1951, Wise was enrolled in five classes. They included: three classes in a modified version of 8th-grade English designated as English 8-Jr. (Reading-Written-Oral), in which he received grades of 50, 60, and 60 (see paragraph (e) of this finding); and a class in JHS Mathematics 7-8, in which he received a grade of 60 (see paragraphs (d), (e), and (f) of this finding). The evidence does not disclose the nature of the fifth class, except that the subject was regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with the English and mathematics classes previously mentioned, on the ground that these subjects were not high school subjects.
(h) Wise was enrolled in eight classes for varying periods of time in the spring semester of 1952. They were: a class in a modified version of 8th-grade English designated as English 8-J (Oral), for which no grade was recorded (see paragraphs (e) and (g) of this finding); a class in a modified version of 8th-grade English designated as English 8-J (Reading), for which no grade was recorded; a class in a modified version of 8th-grade English designated as English 8-J, for which no grade was recorded; a class in a modified version of 8th-grade English designated as English 8-S (Oral), in which he received a grade of 90; a class in a modified version of 8th-grade English designated as English 8-S (Reading), in which he received a grade of 90; a class in a modified version of 8th-grade English designated as English 8-S (Written), in which he received a grade of 90; a class in a special subject designated as General Mathematics, in which he received a grade of 65; and typing, for which no grade was recorded. The RLS School submitted a claim in the amount of $238 for tuition in connection with the classes previously mentioned. This claim was disallowed by the YA to the extent of $201.50. With respect to the seven classes in English and mathematics, the school’s claim for tuition amounted to $194, and this was disallowed by the VA on the ground that these subjects were not high school subjects, and, in so far as $48 of this amount was concerned, it was also disallowed on the further ground that the $48 related to the period after approval of the RLS School was withdrawn on May 21, 1952. The plaintiff’s tuition claim *363 for typing amounted to $44, and it was disallowed by tlie VA to the extent of $7.50, on the ground that this amount related to the period after approval of the RLS School was withdrawn on May 21,1952. The plaintiff is suing for the $201.50 in the present action.
37. (a) The veteran Heskiah Ford attended the RLS School for part of the spring semester in 1950, and continued there until the spring semester of 1952, which he attended for only part of the semester. The certificate of eligibility and entitlement which the VA issued to this veteran, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for course in High School at Robert L. Stevenson School.” The certificate that was executed by an official of the RLS School in connection with his enrollment gave the name of the course for which he was enrolled as “High School.” The vouchers that the RLS School submitted to the VA in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) Ford was enrolled in four classes in the spring semester of 1950. They were: a class in a special English subject designated as General English, in which he received a grade of 75; a class in a modified version of 7th-grade English designated as English 7-AB-Jr. (Oral), in which he received a grade of 85; and two classes in a special mathematics subject designated as General Mathematics 4, in which he received grades of 85 and 70. The defendant asserts a counterclaim for $118.45, representing the tuition that was paid in connection with the classes previously mentioned, and for $8.93, representing the amount that was paid for supplies furnished to Ford in connection with the same classes. The defendant contends that the RLS School was required, as a matter of law, to limit Ford’s enrollment to high school subjects, and that the subjects mentioned were not high school subjects.
(c) Ford took four subjects in the summer term of 1950.[29] One was a special mathematics subject designated as JHS Mathematics 7-8, in which he received a grade of 70. The *364 evidence does not disclose the nature of the other subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $20, representing the tuition that was paid in connection with JTIS Mathematics 7-8, and for $2.02, representing the amount that was paid for supplies furnished to Ford in connection with the same subject. The defendant contends that this subject was not a high school subject.
(d) Ford was enrolled in five classes in the fall semester of 1950. They were: two classes in a modified version of 8th-grade English designated as English 8-AB-Jr. (Oral), in which he received grades of 80 and 80; a class in a special English subject designated as Great Boohs — Remedial, which he attended for part of the semester only and for which no grade was recorded; a class in JHS Mathematics 7-8, in which he received a grade of 70 (see paragraph (c) of this finding); and a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., in which he received a grade of 70. The defendant asserts a counterclaim for $184.47, representing the tuition that was paid in connection with the classes previously mentioned, and for $7.45, representing the amount that was paid for supplies furnished to Ford in connection with the same classes. The defendant contends that the subjects mentioned were not high school subjects.
(e) Ford was enrolled in four classes in the spring semester of 1951. They were: two classes in English 8-AB-Jr. (Oral), in which he received grades of 80 and 80 (see paragraph (d) of this finding); a class in JHS Mathematics 7-8, in which he received a grade of 65 (see paragraphs (c) and (d) of this finding); and a class in a modified version of 8th-grade mathematics designated as Mathematics 8-Jr., in which he received a grade of 65. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with the classes mentioned, and for $6.29, representing the amomit that was paid for supplies furnished to Ford in connection with the same classes. The defendant contends that these subjects were not high school subjects.
*365 (f) Ford took three subjects in the summer term of 1951. They were: English 7-AB-Jr. (Oral), in which he received a grade of 80 (see paragraph (b) of this finding); English 8-AB-Jr. (Oral), in which he received a grade of 65 (see paragraphs (d) and (e) of this finding); and JHS Mathematics 7-8, in which he received a grade of 70 (see paragraphs (c), (d), and (e) of this finding). The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the subjects previously mentioned, and for $1.66, representing the amount that was paid for supplies furnished to Ford in connection with the same subjects. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(g) Ford was enrolled in four classes in the fall semester of 1951. They were: a class in JHS Mathematics 7-8, in which he received a grade of 65 (see paragraphs (c), (d), (e), and (f) of this finding); a class in a modified version of 8th-grade English designated as English 8-J (Written), in which he received a grade of 80 (see paragraphs (d), (e), and (f) of this finding); a class in a modified version of 8th-grade English designated as English 8-JS (Oral), in which he received a grade of 90; and a class in a modified version of 8th-grade English designated as English 8-J (Beading), in which he received a grade of 90. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with these four classes, and for $6.23, representing the amount that was paid for supplies furnished to Ford in connection with the same classes. It is the defendant’s contention that the subjects mentioned were not high school subjects.
(h) In the spring semester of 1952, Ford was enrolled in four classes, for which no grades were recorded. They were: a class in a modified version of 8th-grade English designated as English 8-S (Written) (see paragraph (g) of this finding) ; a class in a modified version of 8th-grade English designated as English 8-S (Oral); a class in a modified version of English designated as English 8-S (Beading) ; and a class in a modified version of 9th-grade mathematics designated as Mathematics 9-A. The BLS School submitted a claim for tuition in the amount of $156 and a claim for $9.32 *366 based upon, supplies furnished to Ford. The tuition for the three English classes amounted to $117, and the supplies claim with respect to these same classes amounted to $6.99. The VA disallowed these amounts on the ground that the English was not at the high school level; and it also disallowed $7.50 of this tuition claim and 45 cents of this supplies claim on the further ground that these amounts related to the period after approval of the RLS School was withdrawn on May 21,1952. With respect to Mathematics 9-A, the VA disallowed the RLS School’s tuition claim to the extent of $2.50 and the supplies claim to the extent of 15 cents on the ground that these amounts related to the period after approval of the RLS School was withdrawn. The plaintiff is suing for the $126.64 in the present action.
38. (a) The veteran Esteban Barrientos attended the RLS School from the spring semester of 1951 through the spring semester of 1952. The certificate of eligibility and entitlement which the VA issued to this veteran, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for an Academic course at the Robert Louis Stevenson School.” The certificate that was executed by an official of the RLS School in connection with his enrollment gave the name of the course for which he was enrolled as “High School-Academic.” The vouchers that the RLS School submitted to the VA in obtaining payments for this veteran’s tuition and for supplies furnished to bim indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) Barrientos was enrolled in five classes in the spring semester of 1951. They were: two classes in a special English subject designated as English 5-AB, in which he received grades of 75 and 80; a class in a special mathematics subject designated as JHS Mathematics 7-8, in which he received a grade of 75; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., which he took for part of the semester only and for which no grade was recorded; and a class in Spanish 7-8, for which no grade was recorded. The defendant asserts a counterclaim for $90.68, representing the tuition that was paid in connection with the two English classes and Mathematics 7-Jr., *367 and for the amount that was paid for supplies in connection with these same classes.[30] It is the defendant’s contention that the RLS School could not properly enroll Barrientos for anything except high school subjects, and that English 5-AB and Mathematics 7-Jr. were not high school subjects.
(c) Barrientos took three subjects in the summer term of 1951. They were: English 5-AB, in which he received a grade of 85 (see paragraph (b) of this finding); a special subject in English designated as English Fundamentals, in which he received a grade of 70; and Spanish 7-8, for which no grade was recorded (see paragraph (b) of this finding). The defendant asserts a counterclaim for $40, representing the tuition that was paid in connection with the two English subjects, and for $4.90, representing the amount that was paid for supplies in connection with the same subjects. It is the defendant’s contention that the two English subjects were high school subjects.
(d) Barrientos was enrolled in four classes in the fall semester of 1951. They were: a class in a special English subject designated as English 6 (Oral), in which he received a grade of 80; a class in a special English subject designated as English 6 (Reading), in which he received a grade of 80; a class in a special English subject designated as English 6 (Written), in which he received a grade of 80; and a class in a modified version of 7th-grade mathematics designated as Mathematics 7-B, in which he received a grade of 80. The RLS School submitted a claim for tuition in the amount of $200 and a claim for supplies in the amount of $5.87, with respect to the four classes mentioned in this paragraph. The claims were disallowed by the YA on the ground that the subjects mentioned were not high school subjects. The plaintiff is suing for the $200 and the $5.87 in the present action.
(e) Barrientos was enrolled in four classes in the spring semester of 1952. They were: a class in English 6 (Oral), *368 in which he received a grade of 75 (see paragraph (d) of this finding); a class in English 6 (Heading), in which he received a grade of 75 (see paragraph (d) of this finding) ; a class in English 6 (Written), in which he received a grade of 85 (see paragraph (d) of this finding); and a class in a modified version of 8th-grade mathematics designated as Mathematics 8-B, in which he received a grade of 65. The ELS School submitted a claim for tuition in the amount of $200, and a claim for the furnishing of supplies in the amount of $7.31, with respect to the four classes mentioned. The claims were disallowed by the VA on the ground that the subjects mentioned were not high school subjects. In addition, the tuition claim was disallowed to the extent of $54 and the supplies claim was disallowed to the extent of $1.97 on a second ground, namely, that these amounts related to the period after the approval of the ELS school was withdrawn on May 21, 1952. The plaintiff is suing for the $200 and the $7.31 in the present action.
39. (a) The veteran Jose A. Perez Martinez attended the ELS School for a period beginning in the fall semester of 1950 and extending to the spring semester of 1952. The certificate of eligibility and entitlement which was issued to this veteran by the VA, and which was the authority for his enrollment in the ELS School, stated that it was “Valid for Academic Course at the Eobert Louis Stevenson School, New York City, N.Y.” The certificate that was executed by an official of the ELS School in connection with his enrollment gave the name of the course for which he was enrolled as “High School.” The vouchers that were submitted by the ELS School in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) Perez Martinez was enrolled in six classes for varying periods of time in the fall semester of 1950. They were: a class in a special English subject designated as English 5-A, for which no grade was recorded; a class in a special English subject designated as English 5-B, for which no grade was recorded; a class in a special English subject designated as English Fundamentals, for which no grade *369 was recorded; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., for which no grade was recorded; and two classes in Spanish 7-8, in which Perez Martinez received a grade of 75.[31] The defendant asserts a counterclaim for $104.86, representing the tuition that was paid in comiection with the English and mathematics classes, and for $8.22, representing the amount that was paid for supplies in connection with the same classes. It is the defendant’s contention that the RLS School was under a legal obligation to enroll Perez Martinez for high school subjects only, and that the English and mathematics subjects mentioned in this paragraph were not high school subjects. The defendant also asserts a counterclaim for $34.95, representing the tuition that was paid in connection with one of the two classes in Spanish 7-8, and for $2.74, representing the amount that was paid for supplies furnished to Perez Martinez in connection with the same Spanish class. The defendant assumes that the two Spanish 7-8 classes were repetitive of each other. There is no direct evidence in the record on the subject of the alleged repetition. It is reasonable to infer that one of the Spanish 7-8 classes covered the first semester’s work in a 2-semester subject, while the other class covered the second semester’s work in the same subject.
(c) Perez Martinez was enrolled in five classes in the spring semester of 1951. They were: a class in a special English subject designated as English 5 (Oral), for which no grade was recorded; a class in a special English subject designated as English 5 (Written), for which no grade was recorded; a class in a special English subject designated as English 5 (Reading), for which no grade was recorded; a class in Mathematics 7-Jr., in which he received a grade of 70 (see paragraph (b) of this finding); and a class in Spanish 7, in which he received a grade of 80. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with the English and mathematics classes, and $8.03, representing the amount that was paid for supplies in connection with the same classes. It is the *370 defendant’s contention that the English and mathematics subjects mentioned were not high school subjects.
(d) Perez Martinez took four subjects in the summer term of 1951. They were: English 5 (Oral), for which no grade was recorded (see paragraph (c) of this finding); English 5 (Written), for which no grade was recorded (see paragraph (c) of this finding); a special subject designated as JHS Mathematics 7-8, in which he received a grade of 75; and Spanish 8-B, in which he received a grade of 70. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the English and mathematics subjects, and for $4.88, representing the amount that was paid for supplies in connection with these same subjects. It is the defendant’s contention that these English and mathematics subjects were not high school subjects. The defendant also asserts a counterclaim for $20, representing the tuition that was paid in connection with Spanish 8-B, and for $1.62, representing the amount that was paid for supplies in connection with the Spanish subject. The defendant assumes that Spanish 8-B, which Perez Martinez took in the summer term of 1951, was repetitive of Spanish 7-8, which he took in the fall semester of 1950. There is no evidence in the record on the issue of the alleged repetition. It is reasonable to infer that Spanish 8-B covered different material from that covered by, and was not repetitive of, Spanish 7-8.
(e) Perez Martinez was enrolled in six classes in the fall semester of 1951. They were: a class in a special English subject designated as English 5-6 (Reading), for which no grade was recorded; a class in a special English subject designated as English 5-6 (Written), for which no grade was recorded; a class in a special English subject designated as English 5-6 (Oral), for which no grade was recorded; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-B, which Perez Martinez took for part of the semester only and in which he received a grade of 50; a class in a modified version of 8th-grade mathematics designated as Mathematics 8-A, which he took for part of the semester and for which no grade was recorded ; and a class in Social Studies 8, for which no grade *371 was recorded. The defendant asserts a counterclaim for $200, representing the tuition that was paid in connection with the mathematics and English classes, and for $4.26, representing the amount that was paid for supplies in connection with these same classes. It is the defendant’s contention that the English and mathematics subjects mentioned were not high school subjects.
(f) Perez Martinez was enrolled in seven classes for varying periods of time in the spring semester of 1952. No grades were recorded for these classes. They were: a class in a special English subject designated as English 6 (Oral); a class in a special English subject designated as English 6 (Reading); a class in a special English subject designated as English 6 (Written); a class in Mathematics 7-B (see paragraph (e) of this finding); a class in Mathematics 8-A (see paragraph (e) of this finding); a class in a modified version of 8th-grade mathematics designated as Mathematics 8-B; and Social Studies 8-B. The RLS School submitted a claim for tuition in the amount of $175 with respect to the classes mentioned in this paragraph. The portion of the claim relating to tuition for the mathematics and English classes, amounting to $146.50, was disallowed by the VA on the ground that these subjects were not high school subjects. The plaintiff is suing for the $146.50 in the present action.
40. (a) The veteran Alayon R. Morales attended the RLS School from the fall semester of 1948 through the spring semester of 1952. The certificate of eligibility and entitlement which the VA issued to this veteran did not specify the course that he could take. However, the certificate that was executed by an official of the RLS School in connection with his enrollment gave the name of the course for which he was enrolled as “High School”; and the vouchers that were submitted by the RLS School in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) Morales attended the RLS School for only part of the 1948 fall semester. He took five subjects, but no grades were recorded for his work in these subjects. One was a special *372 subject in mathematics designated as General Mathematics. The evidence does not disclose the nature of the other four subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $12.66, representing the tuition that was paid in connection with General Mathematics, and for $1.54, representing the amount that was paid for supplies in connection with this same subject. It is the defendant’s contention that the ELS School was authorized to enroll Morales in high school subjects only, and that General Mathematics was not a high school subject.
(c) Morales took five subjects in the spring semester of 1949. They included: General Mathematics, in which he received a grade of 65 (see paragraph (b) of this finding); and Spanish 7-8, in which he received a grade of 70. The evidence does not disclose the nature of the other three subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $43.75, representing the tuition that was paid in connection with General Mathematics, and for $1.32, representing the amount that was paid for supplies in connection with this same subject. It is the defendant’s contention that General Mathematics was not a high school subject.
(d) Morales took four subjects in the summer term of 1949. They included Spanish 8-7, in which he received a grade of 87. The evidence does not disclose the nature of the other subjects, except that they were regarded by the YA as being at the high school level. No question is raised by the defendant with respect to this term.
(e) Morales took five subjects in the fall semester of 1949. They included Spanish 7-8, in which he received a grade of 80. The evidence does not disclose the nature of the other subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $50, representing the tuition that was paid in connection with Spanish 7-8, and for $3.13, representing the amount that was paid for supplies in connection with this same subject. The defendant assumes that the work taken by Morales in Spanish 7-8 during the fall semester of 1949 was repetitive of the work which he had previously *373 taken in Spanish 7-8 during the spring semester of 1949. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that Spanish 7-8 was a 2-semester subject, and that Morales took the first semester’s work in the spring semester of 1949 and the second semester’s work in the fall semester of 1949.
(f) Morales took five subjects in the spring semester of 1950. They included a special English subject designated as English 5-AB (Oral-Written), for which no grade was recorded; and Spanish 8-7, in which he received a grade of 85. The evidence does not disclose the nature of the other subjects, except that they were regarded by the VA as being at the high school level. The defendant asserts a counterclaim for $50, representing the tuition that was paid in connection with English 5-AB (Oral-Written), and for $1.96, representing the amount that was paid for supplies in connection with the same subject. It is the defendant’s contention that English 5-AB (Oral-Written) was not a high school subject. The defendant also asserts a counterclaim for $50, representing the tuition that was paid in connection with Spanish 8-7, and for $1.96, representing the amount that was paid for supplies in connection with the same subject. The defendant assumes that the instruction in Spanish 8-7 which Morales received in the spring semester of 1950 was repetitive of the instruction in Spanish 8-7 which he had received during the summer term of 1949. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that Spanish 8-7 was a 2-semester subject, and that Morales took the first half of the subject in the summer term of 1949 and the other half in the spring semester of 1950.
(g) Morales was enrolled in four classes in the summer term of 1950. They included two classes in a special English subject designated as English 6-AB/6 (Reading-Written-Oral), for which no grade was recorded; and a class in a special mathematics subject designated as JHS Mathematics 7, in which he received a grade of 70. The evidence does not disclose the nature of the fourth class, except that the VA regarded the subject as being at the high school level. The defendant asserts a counterclaim for $40, representing the *374 tuition that was paid in connection witb the English classes, and for the amount that was paid for supplies in connection with the same classes.[32]
(h) Morales was enrolled in nine classes for varying periods of time in the fall semester of 1950. No grades were recorded for his work in these classes. They were: a class in a modified version of Yth-grade English designated as English 7-A; a class in a modified version of 7th-grade English designated as English 7-B; a class in a special English subject designated as English 5B-6B; a class in a special English subject designated as English 5A-6A; a class in a special English subject designated as English 6-B; a class in a special English subject designated as English 6-A; a class in a special English subject designated as Great Books-Remedial; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr.; and a class in Spanish 8. The defendant asserts a counterclaim for $144.66, representing the tuition that was paid in connection with the English classes, it being the defendant’s contention that these English subjects were not high school subjects.[33] The defendant also asserts a counterclaim for $50, representing the amount that was paid for tuition in connection with Spanish 8, it being the defendant’s assumption that Spanish 8 was repetitive of Spanish 8-7, which Morales took in the summer term of 1949 and in the spring semester of 1950. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that Spanish 8 covered material different from that covered by Spanish 8-7.
(i) Morales was enrolled in five classes in the spring semester of 1951. They were: three classes in a special English subject designated as English 5-AB (Oral-Written), for which no grade was recorded;[34] and two classes in Spanish 7-8, in which he received a grade of 70.[35] The defendant as *375 serts a counterclaim for $129.41, representing the tuition that was paid in connection with the three English classes, and for $4.81, representing the amount that was paid for supplies in connection with these same classes. It is the defendant’s contention that the English subject mentioned was not a high school subject. The defendant also asserted a counterclaim for $100, representing the tuition that was paid in connection with the classes in Spanish 7-8, and for $3.72, representing the amomit that was paid for supplies in connection with the two Spanish classes. This particular counterclaim is based upon the fact that Morales had previously passed and received high school credit for Spanish 7-8 in the spring semester of 1949 and the fall semester of 1949.
(j) Morales toot four subjects in the summer term of 1951. They included: Great Books-Remedial, for which no grade was recorded (see paragraph (h) of this finding); a special English subject designated as English 6 (Oral), for which no grade was recorded; and Spanish 8-A, in which Morales received a grade of 70. The evidence does not disclose the nature of the fourth subject, except that it was regarded by the VA as being at the high stfhool level. The defendant asserts a counterclaim for $40, representing the tuition that was paid in connection with the two English subjects, and for $2.53, representing the amount that was paid for supplies in connection with these same subjects. It is the defendant’s contention that the two English subjects were not high school subjects. The defendant also asserts a counterclaim for $20, representing the tuition that was paid in connection with Spanish 8-A, and for $1.27, representing the amount that was paid for supplies in connection with Spanish 8-A. It is reasonable to infer that Spanish 8-A was the designation of the first half of Spanish 8, which Morales had previously taken in the fall semester of 1950. In this connection, however, Morales did not receive a grade in Spanish 8 and the subject could properly be repeated.
(k) Morales was enrolled in five classes in the fall semester of 1951. They were: a class in a special English subject designated as English 6 (Written), for which no grade was recorded; a class in a special English subject designated as English 6 (Reading), for which no grade was recorded; a *376 class in a special English subject designated as English 6 (Oral), for which no grade was recorded (see paragraph (j) of this finding); a class in a modified version of 7th-grade mathematics designated as Mathematics 7-A, in which he received a grade of 70; and a class in Social Studies 8-AB, for which no grade was recorded. The defendant asserts a counterclaim for $150, representing the tuition that was paid in connection with the three English classes. It is the defendant’s contention that the English was below the high school level.[36]
(1) Morales was enrolled in five classes in the spring semester of 1952. They were: a class in a modified version of 7th-grade mathematics designated as Mathematics 7-B, in which he received a grade of 70; a class in a modified version of 7th-grade English designated as English 7 (Reading) , in which he received a grade of 80; a class in a modified version of 7th-grade English designated as English 7 (Written), in which he received a grade of 80; a class in a modified version of 7th-grade English designated as English 7 (Oral), in which he received a grade of 80; and Social Studies 8-B, for which no grade was recorded. The RLS School submitted a tuition claim for $250 in connection with these classes. The portion of the claim relating to the English and mathematics classes amounted to $200, and this portion of the claim was disallowed by the VA on the ground that the English and mathematics subjects were not high school subjects. Furthermore, $54 of the $200 was disallowed on a second ground, namely, that the $54 related to the period after approval of the RLS School was withdrawn on May 21, 1952. The total tuition claim for $250 included $50 for Social Studies 8-B; and this phase of the claim was disallowed to the extent of $13.50 on the ground that the $13.50 related to the period after approval of the RLS School was withdrawn. The plaintiff is suing for the $200 and the $13.50 in the present action.
41. (a) The veteran Juan Gascot attended the RLS School from the. fall semester of 1950 through the spring semester of 1952. The certificate of eligibility and entitlement which *377 the VA issued to this veteran, and which was the authority for his enrollment in the RLS School, stated that it was “Valid for Academic Course at Robert Louis Stevenson School.” The certificate that was executed by an official of the RLS School in connection with his enrollment gave the name of the course for which >he was enrolled as “High School.” The vouchers that the RLS School submitted to the VA in obtaining payments for this veteran’s tuition and for supplies furnished to him indicated that he was taking a “High School Course” (but the specific subjects taken were listed).
(b) In the fall semester of 1950, Gascot was enrolled in six classes for varying periods of time. They were: a class in a special English subject designated as English 5-A, for which no grade was recorded; a class in a special English subject designated as English 6-A, for which no grade was recorded; a class in a special English subject designated as English 6-B, for which no grade was recorded; a class in a special English subject designated as Great Books-Remedial, for which no grade was recorded; a class in a special subject designated as Mathematics Fundamentals, for which no grade was recorded; and a class in Spanish 8, in which he received a grade of 80. The defendant asserts a counterclaim for $159.71, representing the tuition that was paid in connection with the English and mathematics classes, and for $7.06, representing the amount that was paid for supplies in connection with the same classes. It is the defendant’s contention that the RLS School could not properly enroll Gascot for anything except high school subjects, and that these English and mathematics subjects were not high school subjects.
(c) Gascot was enrolled in five classes in the spring semester of 1951. They were: a class in a modified version of 7th-grade English designated as English 7 (Oral), for which no grade was recorded; a class in a modified version of 7th-grade English designated as English 7 (Written), for which no grade was recorded; a class in a modified version of 7th-grade English designated as English 7 (Reading), for which no grade was recorded; a class in a modified version of 7th-grade mathematics designated as Mathematics 7-Jr., for *378 which no grade was recorded; and a class in Spanish 7, in which Gascot received grades of 80 and 80.[37] The defendant asserts a counterclaim for $181.37, representing the tuition that was paid in connection with the English and mathematics classes, and for $7.09, representing the amount that was paid for supplies in connection with the same classes. It is the defendant’s contention that these English and mathematics subjects were not high school subjects.
(d) Gascot was enrolled in four classes in the simmer term of 1951. They were: a class in a modified version of 8th-grade English designated as English 8 (Oral), for which no grade was recorded; a class in a modified version of 8th-grade English designated as English 8 (Written), for which no grade was recorded; a class in a modified version of 8th-grade mathematics designated as Mathematics 8-A, for which no grade was recorded; and a class in Spanish 8-B, in which Gascot received a grade of 60. The defendant asserts a counterclaim for $60, representing the tuition that was paid in connection with the English and mathematics classes, and for $7.12, representing the amount that was paid for supplies in connection with the same classes. It is the defendant’s contention that these English and mathematics subjects were not high school subjects. The defendant also asserts a counterclaim for $20, representing the tuition that was paid in connection with Spanish 8-B, and for $2.38, representing the amount that was paid for supplies in connection with Spanish 8-B. The defendant assumes that Spanish 8-B, which Gascot took in the summer term of 1951, was repetitive of Spanish 8, which he had previously taken in the fall semester of 1950. There is no direct evidence in the record on the issue of the alleged repetition. It is reasonable to infer that Spanish 8-B covered the second half of Spanish 8, a 2-semester subject, and that Gascot had taken the first half of the subject in the fall semester of 1950.
(e) Gascot was enrolled in four classes in the fall semester of 1951. No grades were recorded for Gascot’s work in these *379 classes. They were: a class in a modified version of 9th-grade English designated as English 9 (Reading); a class in a modified version of 9th-grade English designated as English 9 (Written) ; a class in a modified version of 9th-grade English designated as English 9 (Oral), which Gascot attended for part of the semester only; and a class in 10th-grade history designated as History 10-A. The RLS School submitted a tuition claim for $165.88 with respect to the four classes. The claim was disallowed by the VA to the extent of $15.88, representing the amount of the tuition for English 9 (Oral). It is the defendant’s contention that the RLS School is not entitled to collect tuition for more than two semesters of work in 9th-grade English. The plaintiff is suing for the $15.88 in the present action.
(f) Gascot took three subjects in the spring semester of 1952. No grades were recorded for his work in these three subjects. They were: a modified version of 10th-grade English designated as English 10 (Reading); History 10-B; and History 11-A. The RLS School submitted a tuition claim for $150 with respect to these three subjects. The claim was disallowed by the VA to the extent of $40.50 on the ground that this amount related to the period of time after approval of the RLS School was withdrawn on May 21, 1952. The plaintiff is suing for the $40.50 in the present action.
42. Evidence concerning certain other veterans who attended the RLS School under Part VIII of Veterans’ Regulation No.l(a) was presented by the plaintiff for the purpose of illustrating variations in certifications by the VA with respect to the courses that might be taken at the RLS School by veterans. The pertinent data are set out below. In the first column is the name of the veteran; in the second column is language that was used by the VA concerning the prospective course of study when it issued to the veteran a certificate of eligibility and entitlement in order that he might enroll in the RLS School; and in the last column is language that was used by an official of the RLS School in certifying to the VA, after the veteran’s enrollment, with respect to the course for which he was enrolled.

*380
Veteran Certificate of Eligibility and Entitlement Enrollment Certificate

Juan R. Oaballero. Valid for course in Junior High School Training at the Robert Louis Stevenson School. High School.
Budgman Carolina. Valid for Basic Education Studies at Robert Louis Stevenson School. High School-Elementary.
Luis Cruz_ Valid for course in Reading, Speaking and Writing English at Robert L. Stevenson School. High School-English.
Juan Diaz Pinero. Valid for Junior High School Course at Robert Louis Stevenson School. High School.
Nathaniel Downs. Valid for Elementary course, Stevenson School. High School.
Anastacio Garcia. _ Valid for Junior High School at Robert Louis Stevenson School. Jr. High School.
James Gnatt_ Valid for Elementary School course at Robert L. Stevenson School. High School-elementary.
Louis O. Gonzalez. Valid for an Academic (Grammar) course at Robert Louis Stevenson School. High School.
Angel M. Iglesias. Valid only for Academic course (Reading, Writing and Arithmetic only) at Robert Louis Stevenson School. Academic Course (Reading, Writing Arithmetic).
Richard J. Krasnodebski. Valid for an approved Elementary School course at Robert Louis Stevenson School. High School-Elementary.
Anthony V. Lugo.. Valid for Robert Louis Stevenson H. S. Elementary Course. High School.
Bernardino Mercado. Valid only for Academic Course on Elementary Level at Robert Louis Stevenson School. High School-Academic Course.
Walter W. Merrick. Valid for Junior High School & High School Courses at Robert Louis Stevenson High School. High School Course.

*381
Veteran Certificate ofi Eligibility and Entitlement Enrollment Certificate

Robert S. Milton__ Valid for completion of Elementary School training at the Robert L. Stevenson School. High School-Elementary.
Pedro Osorio Vazquez. Valid for Junior High School course at Robert L. Stevenson School. High School.
Juan V. Pacheco. . Valid only for Beginner’s English — Robert L. Stevenson School. Remedial English.
Juan Palmer. Valid only for Academic (Elementary) Courses at Robert Louis Stevenson School. High School-Elementary Academic.
Leopoldo Perales Ortiz. Valid for Preparatory and High School course at Robert Louis Stevenson School. High School.
Felipe Q. Reyes— Valid for Elementary School at Robert Louis Stevenson School. High School-Elementary,
Marcelino Rivera Gomez. Valid for course in Junior High School at Robert Louis Stevenson School. High School-Junior.
Evangelista Rivera Santiago. Valid for Basic English Course only at Robert Louis Stevenson School. High School-English.
Harold Roberts_ Valid for Elementary Education course at Robert L. Stevenson School. High School.
Cecilio Robledo Gonzalez. Valid for Junior High School Course at Robert L. Stevenson School. Junior High School.
Valentin D. Rodriguez. Valid for course in Elementary English Composition and Writing at Robert Louis Stevenson School. High School-English.
William Rodriguez. Valid for Elementary School Subjects at Robert Louis Stevenson School. High School-Elementary Grade.
Gumersindo Romero. Valid for course in English and related elementary subjects at Robert Louis Stevenson School. High School.
Americo J. Santiago. Valid for Junior High School Course at Robert Louis Stevenson School. High School-Jr.

*382
Veteran Certificate of Eligibility and Entitlement Enrollment Certificate

Tomas G. Santiago Valid for Elementary Course at Robert Louis Stevenson. High School.
Joseph Sonnessie— Valid for course in Jr. High School at Robert Louis Stevenson School. Junior High School Course.
Benjamin Soto Cortes. Valid only for Jr. High School course at Robert L. Stevenson School. High School.
Johnnie B. Thompson. Valid for a course in Elementary Schooling at Robert Louis Stevenson School. High School-Elementary,
Cosme D. Vazquez Valid for course in English for Foreigners and Typing at the Robert Louis Stevenson School. High Sehool-English & Typing.
Carlos Velazquez— Valid for Jr. High School Course at Robert Louis Stevenson School. High School.
Ennis Walton. Valid for completion of Elementary School courses at Robert Louis Stevenson School. Elementary courses.
John T. Wilson_ Valid only for courses in Basic English, Arithmetic and General Studies at the Robert Louis Stevenson School. High School.
CONCLUSION OE LAW
Upon tbe foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover. The court further concludes that the defendant is entitled to recover on its counterclaim. Judgment will be entered to that effect. The amounts of the respective recoveries will be determined pursuant to Rule 38(c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on June 30, 1961, that judgment for plaintiff be entered for $253,254.36.

 This regulation was originally promulgated in Executive Order No. 6156, dated June 6, 1933. Part VIII was added to the regulation legislatively by Section 400(b) of Title II of the Servicemen’s Readjustment Act of 1944 (58 Stat. 284, 287-290) in order to provide educational benefits for veterans of World War II.

 The evidence does not disclose the nature of the fifth class, except for the implication that it was a class in a regular subject at the high school level (i.e., in one of the grades from 9 to 12).

 No counterclaim is made by the defendant with respect to the tuition for the two mathematics subjects. Although they were actually below the‘high school level, it appears that Baskins was given credit for these subjects toward high school graduation. The reason why high school credit was given by the RLS School for these subjects below the high school level is not disclosed by the evidence.

 Certain exceptions to the prohibition set out in the second clause were provided for, but the authority of the VA over courses of study under the exceptions is not pertinent to this case.

 The subsequent discussion under the heading of Withdrawal of Approval of RLS School is also applicable to part of the tuition claimed for the spring semester of 1952.

 As indicated in findings 28-29, a suit growing out of this controversy was filed by the plaintiff on May 28, 1952, in the United States District Court for the Southern District of New Xork against certain VA officials. No determination was ever made by that court on the merits, as the case was dismissed on June 30, 1952, by agreement of the parties, after the VA announced its intention to restore the approval of the RLS School under the legislation of July 13, 1950.

 The only explanation offered by witnesses on behalf of the plaintiff for the long delay was the rather unconvincing one that the State Education Department already had in its flies most of the information about the RLS School that was called for by the legislation of July 13, 1950. The information had been accumulated in connection with the prior approval of the day school and the evening school for accreditation purposes, the annual reports made by the school to the State Education Department, and the inspections of the school made by representatives of the State Education Department.

 This regulation was originally promulgated in Executive Order Na. 6156, dated June 6, 1983»

 This is part of paragraph 1 as amended by Section 5(a) of the Act of December 28,1945 (59 Stat. 623, 624).

 This is part of paragraph 2 as amended by Section 5(b) of the Act of December 28, 1945 (59 Stat. 623. 624).

 This is part of paragraph 3(a) as amended by Section 5(c) of the Act of December 28, 1945 (59 Stat. 623, 624).

 Paragraph 4 was amended by Section 1 of the Act of August 6, 1947 (61 Stat. 791), but no change was made in the language quoted here.

 This is part of paragraph 5(a) as amended by Section 5(d) of the Act of December 28, 1945 (59 Stat. 623, 625), by Section 2 of the Act of August 6, 1947 ( 61 Stat. 791), and by Section 7 of the Act of July 13, 1950 (64 Stat. 336, 341). In so far as the material quoted here is concerned, the last of these amendments merely added the designation “(a)”.

 The proviso, which was added to paragraph 9 by Section 1 of the Act of July 13, 1950 (64 Stat. 336), provides for certain exceptions, but none of them is pertinent to the present discussion.

 This is part of paragraph 11(a) as amended by Section 3 of the Act of August 8, 1946 (60 Stat. 934). For a further amendment affecting paragraph 11, see finding 20.

 The material quoted in this finding was incorporated in the 1949 edition of the Code of Federal Regulations as part of Section 21.570(b) (2) (ii), Title 38.

 Eaeh unit represents a normal year’s work in a subject, in a non-aceelerated curriculum.

 Each unit represents a normal year’s work in a subject, in a non-accelerated curriculum.

 No counterclaim Is made by the defendant with respect to the tuition for the two mathematics subjects, as it appears that Baskins was given credit for those subjects toward high school graduation, although they were below the high school level.

 There is no explanation in the evidence for the four grades being given the student in two classes.

 The exact amount of this payment for supplies is not disclosed by the evidence, but it apparently approximated $2.12. No counterclaim is made ■with respect to the payments for tuition and supplies in connection with JHS Mathematics 7-8, as it appears that Orengo received credit for this subject toward high school graduation, although it was not a high school subject.

 There is no explanation in the evidence as to why a single grade was received in these two classes.

 The exact amount that was paid for these supplies is not shown by the evidence, but it apparently aggregated about $4.

 No counterclaim is made with respect to the class in Mathematics 7-Jr., as it appears that Orengo received credit toward high school graduation for the completion of this subject, although it was not a high school subject.

 It Is to be noted that Colon Ortiz bad previously received credit toward high school graduation for General Mathematics 4 by virtue of having taken and passed this subject in the spring semester of 1949 with a grade of 80, and again in the summer term of 1949 with a grade of 65.

 He may have been enrolled In a fifth class for a few days.

 He was In two of the classes for only part of the semester.

 There is no explanation in the evidence as to why this veteran received two grades in one class.

 The evidence does not indicate why this veteran received only one grade in two classes.

 There is no explanation in the evidence as to why this veteran received two grades in a single class.

 He was enrolled In one of these subjects only for a brief period.

 The precise amount that was paid for supplies in connection with the two classes in English and Mathematics 7 — Jr. is not disclosed by the evidence, but it apparently approximated $6. The defendant does not assert a counterclaim with respect to JHS Mathematics 7-8, since it appears that Barrientos received credit toward high school graduation for this subject, despite the fact that it was below the high school level.

 There is no explanation in the evidence as to why Perez Martinez received only a single grade in two Spanish 7-8 classes.

 The precise amount that was paid for supplies in connection with the two English classes is not shown by the evidence, but it apparently approximated $4.24. The defendant does not assert a counterclaim in connection with the JHS Mathematics 7, as Morales was given credit toward high school graduation for this subject, despite the fact that it was below the high school level.

 No counterclaim is asserted with respect to Mathematics 7-Jr., since it appears that Morales was given credit toward high school graduation for this subject, although it was not a high school subject.

 He attended one of the three classes for only part of the semester.

 There is no explanation in the evidence as to why Morales received a single grade in two classes.

 No counterclaim Is asserted with respect to Mathematics 7-A, because Morales was given credit toward high school graduation for this subject, although It was not a high school subject.

 There Is no explanation in the evidence as to why Gascot received two grades in one class.